CHAMBERS DEVELOPMENT COMPANY, INC., Plaintiff,

v.

MUNICIPALITY OF MONROEVILLE; Anthony Lagorga; Marshall W. Bond; Daniel Aston; and Frank J. Brunner, Jr., trading and doing business as Valley Sanitation, Defendants.

Civ. A. No. 84–414.

United States District Court,
W.D. Pennsylvania.

Sept. 13, 1985.

John H. Bingler, Jr., Pittsburgh, Pa., for plaintiff.

David M. Neuhart, Pittsburgh, Pa., for defendant Brunner.

Frank E. Yourick, Jr., Pittsburgh, Pa., for defendant Municipality of Monroeville.

## OPINION ON MOTIONS TO DISMISS

GERALD J. WEBER, District Judge.

This is an action alleging antitrust, RICO (Racketeer Influenced and Corrupt Organizations Act), and civil rights violations, as well as pendant state law claims of inter-ference with contractual and business relations, civil conspiracy, and business libel. Plaintiff is engaged in the business of garbage collection and disposal and operates a landfill in Monroeville, PA. The action was brought against the Municipality of Monroeville, a councilman, a manager, and a fire official of the Municipality, and one of plaintiff's competitors in the garbage collection and disposal business (hereinafter referred to as Valley). All defendants have filed motions to dismiss the complaint as well as alternate motions for more definite statements. All oral depositions and subpoenas for production of documents have been stayed in this case pending the determination of these motions. The parties have supplied the court with briefs in support of their respective positions. We now address all motions to dismiss, accepting the facts for purposes of these motions in the light most favorable to the plaintiff.

## I. ANTITRUST CLAIMS—
### Counts I and II

Plaintiff alleges that defendants entered into contracts, combinations, and conspiracies in restraint of trade in violation of § 1 of the Sherman Act, as well as § 2 monopolization, attempts to monopolize and conspiracy to monopolize.

### A. "STATE ACTION" EXEMPTION

The Municipality and its officials claim a "state action" exemption from antitrust laws as set out in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The *Parker* doctrine rests on principles of federalism and is principally applied to states. The doctrine also applies to those actions of municipalities that are taken pursuant to a clearly expressed state policy.[1] Municipal defendants indicate that the challenged activities in this case are expressly permitted under the Pennsylvania Solid Waste Management Act, 35 P.S. § 6018.202 as follows:

---

1. The U.S. Supreme Court recently decided that active state supervision was not a prerequisite for a municipality to claim the state action exemption where anticompetitive activities are authorized but not compelled by the state. *Town of Hallie, et al. v. City of Eau Claire,* —— U.S. ——, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985).

"(a) Each municipality shall be responsible for the collection, transportation, processing and disposal of municipal waste ...

(b) In carrying out its responsibilities, any such municipality may adopt ordinances, regulations and standards for the storage and collection of municipal wastes which shall be not less stringent than, and not in violation of, the rules, regulations, standards, and procedures of the department ...

(c) Municipalities may contract with any person or other municipality to carry out their responsibilities for the collection, transportation, processing and disposal of municipal wastes, provided that the ultimate disposal is known to be at a site permitted to accept such waste ..."

The Municipal activities challenged by plaintiff consist of the following:

(a) failure by the Municipality to take action approving and sponsoring a Methane Recovery Project within the specified time periods with the result that plaintiff did not obtain a Methane Recovery grant;

(b) adoption of Monroeville Ordinance 1254 disallowing expansion of plaintiff's landfill and imposing regulations, vehicle licensing and landfill inspection procedures;

(c) enforcement of the Vehicle Code;

(d) failure to waive paragraph 13 of plaintiff's Conditional Use Permit No. 73-21 (The permit allowed plaintiff to excavate, fill, and grade at the landfill. Paragraph 13 prohibited blasting. Limited blasting was necessary for plaintiff to meet Department of Environmental Resources (DER) requirements that plaintiff control leachate and develop a methane barrier.);

(e) adoption of Monroeville Ordinance 1379 prohibiting all activity on plaintiff's landfill from 6 p.m. to 6 a.m. Monday through Saturday, and all day Sunday and holidays;

(f) adoption of Ordinance 1376, as a supplement to Vehicle Code 3709, prohibiting persons operating motor vehicles from allowing mud, garbage, and other contents which have fallen from the vehicle to remain on any street, etc.;

(g) advertising for bids for disposal of garbage and wastes, specifying that bidders must have a DER permit, and accepting defendant Valley's bid which falsely and fraudulently represented that Valley had a DER permit, No. 100280;

(h) continuing to dispose of its garbage and wastes at Valley's landfill without contract on an "open market purchase" basis after a Common Pleas Court injunction prohibited the Municipality from awarding the contract on the basis of Valley's bid which did not meet the bid specifications.

Plaintiff argues that although the Municipality has authority to operate in a given area, state law does not mandate that the Municipality act in a clearly anticompetitive manner or set up "a sham bidding procedure which resulted in a group boycott." Plaintiff therefore disputes the applicability of the "state action" exemption.

■ We do not agree with plaintiff's characterization of the facts, nor do we agree that a state "mandate" is necessary. See *Town of Hallie,* —— U.S. at ——, 105 S.Ct. at 1718. The state has specifically authorized municipalities to provide for garbage and waste disposal and has delegated the express authority to take action that foreseeably will result in anticompetitive effects. The Municipality's activities were all directed toward the provision or regulation of authorized services. The fact that the regulatory activities taken were later found to be preempted or ineffective does not, in our opinion, subject the Municipality to antitrust liability. Plaintiff has in the past effectively used state court remedies to challenge improper municipal actions found to be in conflict with the state's extensive regulatory pattern over waste collection and disposal. For these reasons we will dismiss plaintiff's antitrust claims (Count I and Count II) as to the Municipality and its officials, acting in their official capacity.

## B. NOERR PENNINGTON DOCTRINE

Fairly read, the complaint recites actions taken by LaGorga as an individual, in addition to those taken in his official capacity

as a councilman of the Municipality. La-Gorga lives on Thomas Street in Monroeville which is the public road leading to the entrance to plaintiff's landfill. Plaintiff and other garbage collectors travel over this road to bring waste materials to the landfill. The landfill is said to be the reason that LaGorga became involved in politics in the first place, and he has publicly stated his specific intention to shut it down, as well as his opinion that Monroeville should not have the landfill. Plaintiff alleges *inter alia* that LaGorga, "motivated in part by malice and ill will toward plaintiff and by personal self interest," enlisted the aid of others in a conspiracy, the ultimate purpose of which was to force the closing of plaintiff's landfill and the destruction of plaintiff as a going concern.

The factual basis for these allegations includes LaGorga's seeking public support of adverse municipal action, persuading other officials to deny plaintiff's requests or to take adverse actions or to cause delays which would have adverse effects, persuading other officials to strictly enforce the Solid Waste Management Act, the Vehicle Code, or DER regulations, making false and fraudulent representations to Wilmerding officials to persuade them to pass an ordinance with adverse effects on plaintiff, and making unfounded and false allegations about the effects of blasting at plaintiff's landfill during a public hearing to persuade other officials to take adverse action.

■ Defendants argue that these facts describe political or lobbying activities which are protected from antitrust attack under the Noerr-Pennington doctrine. Defendants argue that LaGorga's efforts to influence public policy do not violate the antitrust laws even though they are intended to adversely effect competition. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United*

*Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

■ We agree. LaGorga is not alleged to have been acting on behalf of a competitor. Rather he is acting on what appears to be personal motives or local interest in an attempt to shut down a landfill near his home. His official actions in regulating or providing for waste disposal are exempt from antitrust liability under *Parker.* His actions as an individual in attempting to persuade other officials to take a particular course of action are exempt under the Noerr-Pennington Doctrine.[2]

### C. VALLEY

■ The only remaining defendant is Brunner trading and doing business as Valley Sanitation (Valley). Brunner is alleged to have conspired to monopolize and entered a conspiracy in restraint of trade. Factually, he is said to have submitted a bid to the Municipality to provide waste disposal services, which bid falsely and fraudulently represented that Valley had a DER permit. However since Municipal actions in awarding the contract for waste disposal services are not subject to antitrust scrutiny, we do not see how submitting a bid however fraudulent, for such an award or otherwise providing disposal services could create antitrust liability. We do not believe that the facts as given provide a basis for antitrust claims against this defendant.

For all of the above-stated reasons, we will dismiss the antitrust claims as to all defendants.

### II. RICO CLAIMS—*Counts III and IV*

The Supreme Court recently held that neither prior criminal convictions for predicate acts that constitute a "racketeering activity," nor proof of a distinct "racketeering injury," are prerequisite to maintaining a private RICO action. *See Sedima, S.P. R.L. v. Imrex Co., Inc.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Ameri-*

---

**2.** The cases cited by the plaintiff are distinguishable in that they involve official governmental participation with a private party in a scheme to restrain trade where no "state action" exemption existed. *See Duke & Company, Inc. v. Foerster,* 521 F.2d 1277, 1281 (3d Cir.1975).

*can National Bank & Trust Co. of Chicago v. Haroco, Inc.,* — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). In so holding, the Court signaled that RICO should be broadly interpreted. Furthermore, the Third Circuit has taken a very flexible approach in defining the particularity necessary under F.R.Civ.P. 9(b) to state a RICO claim based on mail or wire fraud. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp., et al,* 742 F.2d 786 (3d Cir.1984). Noting the liberal "notice" pleading requirement of the modern federal rules, the Appellate Court indicated that "date, place or time" allegations were sufficient but not necessary to satisfy the rules, and held that plaintiffs were free to use alternate means of injecting precision and some measure of substantiation into their allegations of fraud.

We believe that plaintiff has met the pleading requirements of *Seville* in so far as it has pled that municipal officials have conducted the affairs of the Municipality (an enterprise) through a pattern of racketeering activity including mail and wire fraud (predicate acts). Complaint at pp. 28, 29. However, we see no factual basis to support plaintiff's RICO claims against Brunner, since he clearly did not conduct Municipal affairs and there is no allegation that he was employed by or associated with the Municipality. We note that the language of 18 U.S.C. § 1962(c) is broader than the allegations of the complaint, and we cannot say that plaintiff would be unable to state facts which would support § 1962(c), (d) claims against Brunner with more specific pleading.[3] Moreover if Brunner is not being charged with RICO violations, plaintiff does not appear to have shown a factual basis for its allegations of a *pattern* of racketeering activity, as this would require some substantiation of the occurrence of two predicate acts by municipal officials within a ten year period.

Plaintiff will therefore be required to amend its RICO counts to provide specifically which defendants are being charged with RICO violations, and to clarify the predicate acts on which it relies to establish a pattern of racketeering activity.

## III. THE CIVIL RIGHTS CLAIM—*Count V*

Count V of Plaintiff's Complaint charges all defendants with violations of 42 U.S.C. § 1983. The Count itself is bare of any separate specific allegations of civil rights violations but it incorporates the general narrative allegations of paragraphs 1–39 of the Complaint. These are the allegations made in support of the anti-trust and the RICO counts of the complaint as well as the pendant claims. The Civil Rights Count merely recites that defendants have acted under color of state statutes, ordinances, regulations, customs, and usages to deprive plaintiff of equal protection and due process as well as property rights, freedom of enterprise, and freedom from the abuse of process.

This is a pretty broad statement of constitutional rights, more akin to the ringing prose of the Declaration of Independence than a specific constitutional construction. We are at loss as to how defendants can properly frame an answer. We would have to speculate ourselves as to which allegations of fact in the general narrative part of the complaint were meant to support the civil rights allegations. Therefore, when judicial mandate requires civil rights allegations to be pleaded with particularity, we will interpret that to mean that the civil rights count in the complaint itself be so pleaded. While there is case authority to the effect that a disappointed bidder on a public contract may assert a civil rights cause of action, this alone is not enough. The complaint must assert the specific cir-

---

**3.** Plaintiff argues in its brief that the Complaint alleges: a) two separate enterprises, one legitimate and the other illegitimate, consisting of (1) the Municipality and (2) an association in fact of all defendants, including the Municipality, and others; b) Brunner is associated with an enterprise consisting of an association in fact of

all defendants and others; and c) the overt acts of Brunner, his participation in the conduct of the affairs of the enterprise are set forth in paragraph 27 of the Complaint. If this was plaintiff's intention, we believe it could be pleaded with more specificity and clarity, giving all defendants notice of the claims against them.

cumstances under which plaintiff was denied due process or equal protection, and what personal or property right has been invaded. Therefore, we will dismiss the civil rights count (Count V) without prejudice to the filing of an amendment to that count.

### IV. PENDANT STATE CLAIMS— *Counts VI, VII, and VIII*

With respect to Counts VI and VII the pendant causes of action, we will deny the Motion to Dismiss with respect to these until we have a firmly established federal cause of action on the federal jurisdiction counts.

It is our understanding that Count VIII, the business defamation count, has been withdrawn and the Motion directed to that count is moot.

An appropriate order will be entered.