453 A.2d 949

**Harry M. LASDAY, Appellant,**

**v.**

**ALLEGHENY COUNTY and Elson's News and Gift Shops, Inc.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1981.

Reargued Sept. 23, 1981.

Decided Dec. 23, 1982.

---

Mark B. Aronson, Behrend, Aronson & Morrow, Pittsburgh, for appellant.

James H. McLean, County Sol., Robert S. Barker, Asst. County Sol., Pittsburgh, for Allegheny County.

James H. Joseph, Joseph & Restauri, Pittsburgh, for Elson's News and Gift Shop.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

OPINION OF THE COURT

ROBERTS, Justice.

Appellant Harry M. Lasday, an unsuccessful bidder and taxpayer, challenges the authority of appellee Allegheny County to enter into a contract with appellee Elson's News and Gift Shops, Inc., for the operation of four newsstand concessions at the Greater Pittsburgh International Airport.

I

In July of 1980, the County, which owns and operates the Airport, announced a new Airport Mall Concession Program for the Terminal Building at the Airport and circulated a document inviting qualified prospective concessionaires, including appellant, to submit "Proposals" to operate various types of concessions. The Request for Proposals provided:

"I. INTRODUCTION

Allegheny County is seeking Proposals from qualified prospective concessionaires for the operation of various

concessions at Greater Pittsburgh International Airport that will offer high quality service and products for patrons of the Airport. The following instructions are for information and guidance, and relate to the proper form and method of submission of Proposals.

A. Any Proposal submitted as provided herein constitutes a suggestion to negotiate and NOT A BID. Submission of a Proposal as provided herein shall not obligate or entitle a prospective concessionaire to enter into an Agreement with Allegheny County for the operation of any concession.

B. Allegheny County is not obligated to respond any Proposal submitted or legally bound in any manner whatsoever by the submission of a Proposal.

C. Any and all Proposals submitted as provided herein are subject to negotiation at the option of the County."

The Request for Proposals also assigned a numerical weight to each of the criteria which would govern the evaluation of proposals:

15%—Financial Return to Allegheny County;

25%—Capital Improvements/Interior Design/Working Capital;

20%—Recommended Products/Merchandising Techniques;

25%—Experience;

10%—Proposed Method of Operation and Service; and

5%—Financial Ability of Prospective Concessionaire.

Among the Proposals sought by the County was one for the operation of a package of six concessions which would include four newsstands and two gift shops (Package I). The Request for Proposals explicitly stated that Package I would not be divided, and that no proposals for any individual concession would be considered separately.[1] Appellant,

1. The document provided:
   "PACKAGE I:

   One concessionaire will be selected to operate four (4) newsstands, the Coal and Steel Shop and the Pittsburgh Shop. This

who had operated a giftshop at the Airport since 1952 and a newsstand since 1962, requested that he be permitted to submit a proposal to operate the four newsstands only. He did so because he believed that "the profit was in the newsstands not in the proposed Coal and Steel Shop and not in the proposed Pittsburgh Shop." Following the County's refusal to entertain appellant's request to submit a limited proposal, appellant submitted a proposal to operate all six concessions in accordance with the terms set forth in the County's Request for Proposals.

In August of 1980, the County notified appellant that his proposal had been rejected. The County also informed appellant that, after private negotiation with two concessionaires who had submitted proposals, the County had decided to divide Package I and to award the four newsstand concessions to Elson's News and Gift Shops, Inc., and to make a separate award of the two giftshop concessions to Zodiac Corporation.[2] The County stated that its decision had been based solely on consideration of the financial return to the County.

Appellant commenced this action in equity by seeking an injunction to prohibit the County from executing a contract with Elson's until formal bidding procedures had been satisfied and until appellant had been afforded an opportunity to submit a proposal for the operation of the four newsstands. Elson's was permitted to intervene as a defendant and both Elson's and the County filed preliminary objections in the nature of demurrers to appellant's complaint. The Court of Common Pleas of Allegheny County sustained the preliminary objections, but granted appellant sixty days to file an amended complaint.

Appellant's amended complaint alleged (1) that he was a common-law franchisee entitled to continue operating his concessions absent just cause for termination of the fran-

package will not be divided and Proposals will not be entertained for any individual facility considered separately."

2. Zodiac Corporation is not a party to this proceeding.

chise; (2) that the County was statutorily required to solicit competitive bids for operation of concession space at the Airport; and (3) that the County, having divided Package I, was obliged to extend to appellant the same opportunity to bid on the modified concession package that was extended to Elson's. The trial court again sustained preliminary objections and dismissed the amended complaint. The Commonwealth Court affirmed, and this Court granted allowance of appeal. After consideration and decision, this Court granted reargument. We reverse the order of the Commonwealth Court and remand with directions.

## II

■ At the outset, we must reject appellant's contention that he was entitled to proceed to trial on the theory that he was a common-law franchisee. "In its simplest terms, a franchise is a license from an owner of a trademark or trade name permitting another to sell a product or service under the name or mark." *Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 508–09, 351 A.2d 207, 211 (1976). " '[T]he cornerstone of a franchise system must be the trademark or trade name of a product.' " *Atlantic Richfield Co. v. Razumic,* 480 Pa. 366, 374–75, 390 A.2d 736, 740 (1978), quoting *Susser v. Carvel Corp.,* 206 F.Supp. 636, 640 (S.D.N.Y.1962), aff'd, 332 F.2d 505 (2d Cir.1964). As appellant's amended complaint does not allege that he sold his products at the Airport under a trademark or trade name supplied by the County, appellant has not alleged facts which, if proven, would entitle him to relief on the theory of a franchise.[3]

■ Appellant's second contention—that the County was statutorily obliged to utilize competitive bidding when leas-

---

**3.** Appellant argues that even if the County did not supply him with products bearing the trademark or trade name of the County, the equitable considerations underlying our decision in *Atlantic Richfield v. Razumic,* 480 Pa. 366, 390 A.2d 736 (1978), apply with equal force to the circumstances here. We disagree. As the Commonwealth Court observed,

"[i]n contrast with a gasoline service station operator having to compete with perhaps countless other stations, appellant operated his retail stores at the Airport virtually as a municipally-permitted monopoly. The newsstand's and gift shop's customers were likely

ing concession space at the Airport—is based upon the Second Class County Code, Act of July 28, 1953, P.L. 723, § 101 et seq., as amended. Appellant relies primarily on section 2001(a) of the Act, which provides:

"(a) All contracts or purchases in excess of two thousand five hundred dollars ($2,500) shall be in writing and, except those hereinafter mentioned, shall not be made except with and from the lowest responsible bidder meeting specifications, after due notice in at least one newspaper of general circulation, published or circulating in the County at least three (3) times, at intervals of not less than three (3) days where daily newspapers of general circulation are employed for such publication, or in case weekly newspapers are employed, then the notice shall be published once a week for two (2) successive weeks. The first advertisement shall be published not less than ten (10) days prior to the date fixed for the opening of bids."

16 P.S. § 5001(a).[4] As the Legislature's use of the phrase "lowest responsible bidder" makes clear, section 2001(a) is addressed to those situations where, unlike here, the County is spending public funds and thus should be attempting to secure for the taxpayers the least costly contract. Here, as lessor, the County is not spending money, but receiving it. The "lowest responsible bidder" requirement is thus manifestly inapposite to this case and, if applied, would lead to the absurd result of requiring the County to award its concession contracts to the concessionaire who promised to pay the County the least rent and the smallest concession fee. Compare *Bevilacqua v. Clark*, 377 Pa. 1, 103 A.2d 661

less regular, more random and/or less deliberate in their patronage than are the motoring public transacting with a service station. Thus the equitable considerations of any goodwill that appellant was building would be less significant."
55 Pa.Cmwlth.Ct. at 428, 423 A.2d at 792.

4. In 1981, the Legislature amended section 2001(a) to raise the mandatory threshold amount for competitive bidding from $2,500 to $4,000. Act of December 1981, Act No. 148, P.L. 477, § 1, 16 P.S. § 5001(a) (Supp.1982). In all other respects, the statutory language remains the same.

(1954) (competitive bidding required for formation of concession contract where statute mandated that "all concessions . . . shall be awarded . . . only . . . to the highest responsible bidder").[5]

▮ Nor do sections 2404 and 2506 of the Second Class County Code support appellant's contention that the County is statutorily obliged to engage in competitive bidding when leasing concession space at the Airport.[6] Although these sections authorize the County to enter into leasehold agreements, including agreements for the operation of concession facilities at the Airport, these sections do not in any respect regulate the procedures which the County must follow when

5. Our conclusion that the scope of the duty to employ competitive bidding imposed by section 2001(a) is limited to contracts involving expenditures of public funds is reinforced by the wording of section 2001(d). Section 2001(d) specifies "[t]he contracts or purchases made by the Commissioners involving an *expenditure* of over two thousand five hundred dollars ($2,500) which shall not require advertising or bidding as hereinbefore provided. . . ." (emphasis added). The use of the word "expenditure" in this context demonstrates that section 2001 contemplates contracts involving the spending, and not the receipt, of money.

6. Section 2404 provides:
   "The county acquiring land for any air navigation and terminal facilities may enter into agreements in the form of a lease, permit, license, concession or otherwise for the use of the same or part thereof, for an adequate consideration, with any person or corporation desiring to use the same for any air navigation and terminal purpose or of any air navigation and terminal facility, on such terms and subject to such conditions and regulations as may be provided. The county may enter into a contract in the form of a lease or otherwise providing for the use of said land or any part thereof by the government of the United States for airmail delivery to other air navigation and terminal purposes, upon nominal rental or without consideration."
   16 P.S. § 5404 (1956).
   Section 2506 provides:
   "The board of commissioners may sell or lease, either as lessor or lessee, any real property belonging to the county or to others where the county is lessee. Any sale herein authorized shall be by petition to the court of common pleas, setting forth a description of the property to be sold and the reason therefor; the court shall thereupon fix a day for hearing and notice of which shall be given in at least two newspapers, in the county, of general circulation, once a week for three consecutive weeks. After hearing, the court shall make such order and decree as shall seem right and proper."
   16 P.S. § 5506 (1956).

negotiating concession agreements. Compare *Price v. Philadelphia Parking Authority,* 422 Pa. 317, 221 A.2d 138 (1966) (competitive bidding required under statute mandating that parking leases be let "on a fair competitive basis").

### III

■ Although the Second Class County Code does not require the County to solicit competitive bids for concession contracts, the County nevertheless undertook to solicit and receive proposals which conformed to the requirements set forth in its Request for Proposals and to evaluate the proposals pursuant to a specified set of criteria. The County's Request for Proposals explicitly stated that one concessionaire would be selected to operate four newsstands and two gift shops and that the County would not entertain proposals for separate operation of the newsstands and gift shops. The Request for Proposals also listed several criteria for evaluation of the proposals and assigned a numerical weight to each criterion, including a weight of 15% for the financial return to the County. However, after all proposals had been submitted, the County both divided Package I and based its decision solely on the financial return to the County.

The unfairness inherent in the County's conduct is evident. Appellant specifically asked County officials to permit him to submit a proposal to operate only the four newsstand concessions. After appellant's request had been rejected, and after appellant had invested the time and effort necessary to prepare a proposal in accordance with the County's guidelines, the County awarded to Elson's the very same concession package for which appellant had unsuccessfully sought to submit a proposal.

The County concedes that it divided Package I and extended only to Elson's and Zodiac Corporation the opportunity to bid on the modified concession packages, but argues that there was no unfairness in its doing so. In the County's view, because it was not statutorily obliged to engage in competitive bidding when it first embarked upon the new concession program, it could have privately approached El-

son's and Zodiac and negotiated concession contracts according to whatever terms the parties mutually agreed, so long as the County did not act fraudulently, capriciously, or in bad faith. See *Weber v. Philadelphia,* 437 Pa. 179, 183, 262 A.2d 297, 299 (1970); *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 109 A.2d 331 (1954). Thus, according to the County, when it decided to extend the terms of its modified concession packages to Elson's and Zodiac Corporation only, it was simply exercising a right which it had at all times possessed.

Whatever the authority of the County to have negotiated the concession contracts privately at the outset, once the County voluntarily undertook to follow a particular procedure, the County was obliged to adhere to that procedure throughout the procurement process. See *American Totalisator Co. v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980). The County was also obliged to conduct the procedure in accordance with basic standards of fairness, an obligation that could not be validly disclaimed, as was attempted here, by a reservation of the right to reject any and all proposals and to negotiate privately with any individual concessionaire.[7]

As appellant's allegations, if proven, would entitle appellant to submit a proposal for revised Package I, the Order of the Commonwealth Court is reversed and the case is remanded to the Court of Common Pleas of Allegheny County for proceedings consistent with this opinion.

NIX, J., files a dissenting opinion, joined by HUTCHINSON, J.

7. Our conclusion that the County was obliged to observe basic standards of fairness when negotiating concession leases is in harmony with the Model Procurement Code for State and Local Government (American Bar Association Approved Draft, 1979). For example, section 3–302(6), which deals with the negotiation of contracts procured pursuant to the Request for Proposals method, provides that "[o]fferors shall be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals," and the commentary to this section admonishes that "[f]air and equitable treatment of competitors dictates that negotiations be conducted in accordance with ethical business standards."

NIX, Justice, dissenting.

One need not look beyond the Introduction to appellee's, Allegheny County's, "Request for Proposals" to determine the majority's error in reinstating appellant's amended complaint in equity.

## "I. INTRODUCTION

Allegheny County is seeking Proposals from qualified prospective concessionaires for the operation of the various concessions at Greater Pittsburgh International Airport that will offer high quality service and products for patrons of the Airport. *The following instructions are for information and guidance,* and relate to the proper form and method of submission of Proposals.

A. *Any Proposal submitted as provided herein constitutes a suggestion to negotiate and NOT A BID. Submission of a Proposal* as provided herein *shall not obligate or entitle a prospective concessionaire to enter into an Agreement with Allegheny County for the operation of any concession.*

B. *Allegheny County is not obligated to respond to any Proposal submitted or legally bound in any manner whatsoever by the submission of a Proposal.*

C. *Any and all Proposals submitted as provided herein are subject to negotiation at the option of the County.*" [Emphasis added.]

Thus, by its very terms, clearly and unambiguously expressed, the request for proposals merely constituted " . . . instructions . . . for information and guidance . . .". Moreover, the submission of a proposal was deemed a " . . . suggestion to negotiate, and NOT A BID . . ."; it did not obligate the County to enter into any agreement for the operation of a concession; and the County was not legally bound "whatsoever" by the submission. The County was not required to *respond* to any proposal because it retained the option to negotiate or not to negotiate in its sole discretion.

I agree with the majority's conclusions that appellant did not possess a common-law franchise and that the County was not statutorily obligated under the Second Class County Code [1] to utilize competitive bidding when leasing concession space at the Greater Pittsburgh International Airport. However, the majority's recognition of a cause of action, under the guise of a "fairness" or quasi "detrimental reliance" theory, is neither warranted under existing statutory schemes, nor consistent with the case law of this Commonwealth.

This Court, in *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 109 A.2d 331 (1954) stated:

By a host of authorities in our own and other jurisdictions it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power: they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That a court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion. *Id.,* 379 Pa. at 572–73, 109 A.2d at 334–35. [Emphasis added.]

Thus, in the absence of a mandated statutory "competitive bidding" procedure, review of the action of Allegheny County must be limited to whether the County acted fraudulently, capriciously or in bad faith. *Blumenschein, supra.* In light of the explicit terms of the County's "Request for

1. Act of July 28, 1953, P.L. 723, § 101, *et seq., as amended.*

Proposal," it is clear that the County may not be charged with fraud, caprice, or bad faith.

The majority expands the holding of *American Totalisator Co. v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980) (where competitive bidding is elected to be used, the procedure followed must not emasculate the benefits of the bidding) beyond competitive bidding cases to cases where "a particular procedure" has been undertaken. I am not prepared to extend the *American Totalisator* concept to this case. The possibility of waste of public funds, the foundation of the competitive bidding rule in *American Totalisator,* is not present here. As the majority aptly points out in Section II of the opinion, the County is *receiving* money rather than *expending* money. Thus it is ironic that the majority, citing *American Totalisator,* now criticizes the County for having based the choice of lessee solely upon financial return to the County.

The broad authority given to the County to enter into such leases is by section 2404 of the Second Class County Code which places the County in the position of any other potential buyer. If that power is to be (1) reduced by the application of a condition precedent of *no* deviation from outlined procedure and/or (2) modified by conformity to the American Bar Association's "Model Procurement Code for State and Local Government" (Approved Draft, 1979) (Code) such changes are within the province of the legislature, not the judiciary. The fact that the Code has not been adopted by our legislature and the scope of judicial review long recognized in this jurisdiction is narrow, counter-indicate our intrusion upon the legislature's province. Moreover, in my view, the majority opinion will open the door to a plethora of suits brought by disgruntled businessmen unhappy at their inability to obtain governmental unit contracts and business.

I therefore dissent and would affirm the Order of the Commonwealth Court which upheld the Court of Common

Pleas of Allegheny County in sustaining the County's preliminary objections.

HUTCHINSON, J., joins in this dissenting opinion.