**ASSOCIATED PENNSYLVANIA CONSTRUCTORS; Sheet Metal & Air Conditioning Contractors National Association of Pennsylvania; Associated Builders and Contractors, Keystone Chapter; and Constructors Association of Western Pennsylvania, Plaintiffs,**

v.

**David L. JANNETTA, Individually and in his capacity as Secretary of the Department of General Services of the Commonwealth of Pennsylvania; and Howard Yerusalim, Individually and in capacity as Secretary of the Commonwealth of Pennsylvania, Department of Transportation, Defendants.**

**Civ. No. 89–0427.**

United States District Court, M.D. Pennsylvania.

May 10, 1990.

Franklin A. Miles, Jr., Elizabeth A. Dougherty, Norman I. White, McNees, Wallace & Nurick, Harrisburg, Pa., for plaintiffs.

William W. Warren, Jr., Chief Counsel, Pennsylvania Dept. of General Services, John L. Heaton, Chief Counsel, Pennsylvania Dept. of Transp., Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

On September 29, 1987, the Governor of the Commonwealth of Pennsylvania issued

---

Executive Order 1987–18, 4 Pa.Code Section 1.451–1.459, creating the Office of Minority and Women Business Enterprises. On October 29, 1988, the Department of General Services of the Commonwealth of Pennsylvania (DGS) published a "Statement of Policy" in the Pennsylvania Bulletin, Vol. 18, No. 44, at pp. 4870–4871, which established Minority Business Enterprise and Women's Business Enterprise (MBE/WBE) "participation objectives" for PennDOT projects. These policy statements were said to be published in accordance with Executive Order No. 1987–18. Plaintiffs filed this suit alleging that the DGS and PennDOT policies create a "quota system; that they create classifications based upon race and gender, are remedial in nature and not supported by any finding of identified discrimination. Defendants contend the challenged policies on their face create no racial preference that would require "strict scrutiny" by this court, that they ferret out only present discrimination, not past discrimination.

Defendants filed a motion to dismiss. The matter was referred to the magistrate who filed a report in which he recommended the motion to dismiss the amended complaint be granted and the plaintiffs' request to file a second amended complaint be denied. Plaintiffs have filed exceptions to the magistrate's report.

The plaintiffs initially filed eleven objections to the magistrate's report. The brief in support raises seven issues. The alleged claims of error can be further refined as follows:

1) The recommendation of dismissal of the case is improper because constitutional issues are involved.

2) The magistrate erred in concluding the regulations did not create classifications based upon race and gender.

3) The magistrate erred in concluding that the challenged regulations are not aimed at past discrimination.

4) The magistrate erred in concluding the challenged regulations were subject to the rational basis test.

5) The defendants had no authority to promulgate the regulations in question.

■ Plaintiffs rely upon *Developmental Disabilities Advocacy Center, Inc. v. Melton,* 689 F.2d 281 (1st Cir.1982), in taking the position that important constitutional and civil rights issues should not be disposed of summarily. In *Developmental Disabilities Advocacy Center, Inc.,* material facts were in dispute and the court wanted a more extensive factual record to be developed. No factual disputes exist in the case *sub judice.* The matters before this court involve legal interpretations. Furthermore, as the magistrate points out, in *Colburn v. Upper Darby Township,* 838 F.2d 663 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989), the court noted that the standard of review is the same for any 12(b)(6) motion and the heightened specificity requirement for § 1983 claims does not alter general standards for ruling on motions to dismiss for failure to state a claim. *Id.* at 666.

■ The principal area with which plaintiffs take issue with the magistrate is whether the policies at issue are used only as a screening device to determine whether discrimination has occurred as opposed to the position that the policy statements create a classification to determine whether bidders have met quotas. The bidding process is described in the magistrate's report and is repeated here:

Under state law, contracts administered by DGS and PennDOT must be awarded to the lowest *responsible* bidder. 36 P.S. Sec. 670–404; 71 P.S. Sec. 638(9). The DGS policy statement provides that under Chapter 1, Subchapter LL, relating to minority women business enterprise, a bidder may not *discriminate* against an MBE or a WBE in the solicitation and utilization of subcontractors, manufacturers, or suppliers. Bidders are required to submit documentation showing MBE/WBE participation levels. The policy statement goes on to provide that the Commonwealth will presume that discrimination has not occurred if a bidder has achieved the Commonwealth's prescribed levels of MBE/WBE participation in the specific job being bid, and no further review will

be undertaken. The policy statement then sets forth the *general* participation *objectives* on a district-by-district basis for MBE's and WBE's. The policy statement then provides that the *specific minimum levels* of MBE/WBE participation will be stated for each contract in the bid documents, and that the specific level set will be based upon factors such as geographical location, contract size, contract type, and availability of MBE and WBE firms.

The DGS policy statement further provides that DGS will perform an initial review of construction contract bid submittals to insure that required MBE/WBE documentation has been submitted. Failure to submit the required information on MBE/WBE participation will result in a rejection of the bid *as being non-responsive.*[1] The policy statement goes on to state that if a bid shows that the bidder has met the prescribed minimum levels for MBE/WBE participation, the contractor will be presumed not to have discriminated in its selections. If the minimum levels are not met, however, DGS will perform a further review to determine whether discrimination has occurred. If, after that review DGS finds that discrimination has occurred, the bidder will be deemed not responsible and its bid will be rejected. (Doc. No. 5, Exh. B).

The PennDOT policy statement is similar. (Doc. No. 5, Exh. C).

Report of Magistrate dated September 18, 1989 at 5–6. The attainment of the levels is a guide in determining bidder responsibility. Failure to attain the MBE/WBE minimum levels does not determine the bid award. If the investigation shows a contractor has not discriminated and shows no MBE/WBE participation, the contractor may still be awarded the contract.

The policies do not require use of certain percentages of women and minorities but, rather, seek to ensure no *current discrimination.* The policies are screening devices as opposed to a classification based on whether prime contractors meet certain quotas for awards to minority and women contractors. Having taken the position that the policy statements create no quota or goal system, the court finds that strict scrutiny does not apply. Rather, the rational basis test applies.

Plaintiffs argument that neither DGS nor PennDOT had or has the authority to issue or enforce the challenged regulations is not properly before this court as that is a matter of state law alone. This court adopts defendants' reasoning as set forth at pages 27–28 in their brief in response to plaintiffs' objections.

The parties were given the opportunity to file supplemental briefs addressing *Main Line Paving Co., Inc. v. School District of Philadelphia,* 725 F.Supp. 1349 (E.D.Pa.1989), as it may apply to this case. Since then another case has been brought to the court's attention—*Contractors Association of Eastern Pa., Inc., et al. v. City of Philadelphia, et al.,* 735 F.Supp. 1274 (E.D.Pa.1990). The plan at issue in the *Main Line* case involved set asides or goals and was remedial in nature. This is not true of the Commonwealth's plan. *The City of Philadelphia* case similarly involved a minority, female and handicapped set-aside program. The stated reasons for that ordinance lead to the deduction that it also is remedial in nature.

It is the opinion of the court that the Executive Order and the challenged regulations in the instant case are facially constitutional. However, the motion to dismiss the complaint will not be granted. A reading of the amended complaint shows plaintiffs also to be challenging the application of the regulations. A determination of this issue cannot be made at this stage of the proceedings.

An appropriate order will be issued.

### ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

---

1. If a contractor fails to submit any of the required data, its bid is non-responsive and may be rejected just as though any other required information or submission were not made. *See Lasday v. Allegheny County,* 499 Pa. 434, 453 A.2d 949 (1982).

1. The report of the magistrate on the issue of facial constitutionality is adopted.

2. The recommendation of the magistrate to dismiss the complaint is rejected.

3. The defendant shall have until June 11, 1990 to file an answer.

4. The captioned case is placed on the February 1991 trial list. Trials on the February 1991 list will commence at 9:30 a.m. on Tuesday, February 5, 1991. Counsel should note that criminal matters take priority and may delay the beginning of the civil trial list. Jury selection will be on Monday, February 4, 1991 at 9:30 a.m. in Courtroom No. 2, Ninth Floor, Federal Building, Third and Walnut Streets, Harrisburg, Pennsylvania. The cases will be tried in docket number order unless otherwise ordered by the court. Counsel may contact the court one week prior to the scheduled jury selection to determine the approximate starting date. However, counsel should be prepared to go to trial on 24 hours notice.

5. The court issues this order pursuant to Rule 16 of the Federal Rules of Civil Procedure. *Requests for extensions of the following time periods will not be granted except under exceptional circumstances and must comply with Local Rule 401.-5. Furthermore, all requests for extensions of the discovery deadline must be made at least thirty (30) days prior to the expiration of the discovery period.*

(a) All discovery shall be completed by October 31, 1990, and shall be completed by the parties expeditiously and diligently.

(b) Dispositive motions *and* supporting briefs must be filed by November 30, 1989.

(c) A pretrial conference will be held on January 3, 1991 at 11:00 a.m. in the Chambers of Courtroom No. 2, Ninth Floor, Federal Building, Third and Walnut Streets, Harrisburg, Pennsylvania.

(d) Local Rule 408.2, as it relates to settlement authority, will apply to this conference.

(e) Each party shall file on or before December 27, 1989 a pretrial memorandum in conformity with the Local Rules.

Failure to timely file pretrial memoranda will result in an appropriate sanction. Fed.R.Civ.P. 16(f).

(f) If counsel file trial briefs they must be filed two (2) working days prior to commencement of trial.

6. Counsel will not mutually agree to extend *any* time periods covered by the local rules or the Federal Rules of Civil Procedure without the approval of the court. All requests shall comply with Local Rule 401.5.

7. In all cases to be tried before a jury, counsel shall meet within four (4) weeks after the close of discovery. At that time, counsel shall discuss settlement and send to this court a jointly prepared status report. Plaintiff shall send under separate cover copies of any documents, reports, medical bills or data of any kind which support his or her demand. The court will review these documents and, at its discretion, schedule a settlement conference as soon as possible thereafter.

8. *Prior to the date scheduled for the submission of the pretrial memoranda, counsel for the parties shall hold the attorneys' conference required by Local Rule 408.3.* This conference shall be face-to-face unless the court, upon written request, approves another arrangement. Failure of the plaintiff to initiate the holding of the conference or the defendant to respond to such initiative in an appropriate manner may result in the imposition of sanctions, including possible dismissal of the action.

9. Counsel who will try the case shall attend the pretrial conference unless the court, upon written request, approves the substitution of another attorney who is fully familiar with the case and has the settlement authority required by Local Rule 408.2. A copy of the Local Rules may be obtained from the Clerk of the Court by writing: Clerk of Court, Federal Building, P.O. Box 983, Harrisburg, Pennsylvania 17108.

10. At the pretrial conference, counsel for the plaintiff shall be required to set forth the elements of the particular type of

claim (or claims) being made. Counsel for the defendant shall be required to identify any legal defenses he/she expects to make. It should be noted that the court expects to hold counsel for both sides to the course they outline here unless good cause is shown for allowing additional legal theories, claims and/or defenses to be argued at trial and unless this court is apprised of these additional legal theories, claims and/or defenses in sufficient time to consider and evaluate them before trial.

11. No later than the pretrial conference counsel shall notify the court if they wish to employ the summary jury trial procedure. The following procedures will apply to all summary jury trials:

(a) *Attendance of Parties.* Individual parties shall attend the summary jury trial. An officer or other responsible lay representative of a corporate party or a claims adjuster for a carrier of said corporate party shall attend the trial.

(b) *Non–Binding Effect.* The summary jury trials are for settlement purposes only and are non-binding. Nothing done by counsel with reference to the summary jury trial shall be binding on counsel or the parties or shall constitute a waiver. Although the proceedings are nonbinding, counsel may stipulate that a consensus verdict of the jury will be deemed a final determination on the merits and the judgment may be entered thereon by the court, or they may stipulate to any other use of the verdict that will aid in the resolution of the case.

(c) *Special Verdict Questions.* The cases will be submitted to the summary juries by way of special verdict questions. Counsel shall submit a joint statement of proposed special verdict questions for use at the summary jury trial to the law clerk at the pretrial conference. Special verdict questions for the summary jury trial need not be the same as those for the regular jury trial.

(d) *Size of Juries.* The summary juries shall consist of six jurors who may proceed through deliberations so long as at least five jurors are present. In two-party cases, each side shall be entitled to two peremptory challenges. In multiple-party cases, if any party feels that more than two peremptory challenges per side should be allowed, he or she shall make such a request orally at the pretrial conference and the court will determine the number of peremptory challenges to be allowed in the case.

(e) *Presentation of the Case by Counsel.* Prior to trial, counsel are to confer with regard to physical exhibits, including documents and reports, and reach such agreement as is possible as to the use of such exhibits. Objections are not encouraged, but will be received if, in the course of a presentation, counsel goes beyond the limits of propriety in presenting statements as to evidence or argument thereon. Each side shall be entitled to one hour for presentation of its case. Presentation of the case by counsel will involve a combination of argument, summarization of the evidence to be presented at the regular trial and a statement of the applicable law, but only to the extent it is needed to be known by the jury in answering the special verdict questions. No live testimony will be presented. Counsel may quote from depositions and may use exhibits. Counsel shall not refer to evidence which would be inadmissible at trial.

(f) *Applicable Law.* At least five days prior to the summary jury trial counsel shall consult with each other in an attempt to agree upon the applicable law. If after such consultation there is a dispute between counsel as to the applicable law to be stated to the summary jury, counsel shall submit points for charge for use in the summary jury trial relating to such dispute as if the court were going to charge the summary jury. Such points for charge shall be submitted *at least 2 days before* the start of the summary jury trial and the court will rule on the conflicts between the parties as to the applicable law immediately before the start of the summary jury trial.

(g) *Verdict.* The jury is encouraged to return a unanimous verdict. Barring unanimity, the jury is to submit a special verdict consisting of an anonymous state-

ment of each juror's findings on liability and/or damages. A majority verdict shall be acceptable. The same majority need not answer each special verdict question.

(h) *Oral Questions to Summary Jury.* After the verdict counsel may address questions in open court to the foreperson of the jury in order to learn why the jury decided as it did. Only leading questions which are susceptible of a yes or no answer or a dollar figure may be asked. The foreperson shall be entitled to decline to answer any question put to him or her. Counsel should realize that lay people normally are nervous when speaking from the jury box and counsel should phrase and present questions such that the foreperson will not feel that he or she is being harassed. No question shall be asked which would require an answer disclosing the personal view of any jury member.

Unless specifically ordered by the court, the proceedings are not recorded. Counsel may, if desired, arrange for a court reporter.

12. If counsel wish to file documents with the Clerk in Williamsport or Scranton, courtesy copies should be mailed directly to this court at P.O. Box 868, Harrisburg, PA 17108.

13. If the parties intend to use depositions at trial in place of live testimony, they shall review the depositions prior to the time of trial. If there are objections which cannot be resolved among counsel, said objections and copies of the relevant depositions shall be submitted to the court at least fifteen (15) days prior to trial. Where counsel have failed to meet the time requirement in this paragraph, the court may, in its discretion, deem the objections withdrawn. If the depositions to be used are videotaped, a transcript must be provided to the court in advance of trial.

14. Whenever any civil action scheduled for jury trial is settled or otherwise disposed of in advance of the actual trial, jurors' costs, including mileage and per diem, shall be assessed equally against the parties unless the Clerk's Office at the place the trial is to be held is notified of the settlement in sufficient time to permit the Clerk to advise the jurors that their attendance will not be necessary. Notice to such Clerk's Office before 2:00 p.m. on the last business day preceding the day on which the trial of the action is to start shall be adequate for such purpose.