Argued February 27, affirmed May 25, reconsideration denied June 7, petition for review denied October 17, 1978

PURCELL, *Respondent,*
*v.*
CITY OF PORTLAND, *Defendant,*
*and*
MULTNOMAH COUNTY, *Appellant.*
(No. 410-978, CA 8074)

579 P2d 269

[ 485 ]

Martin B. Vidgoff, Deputy County Counsel, argued the cause for appellant. With him on the brief was George M. Joseph, County Counsel, Portland.

Robert K. Udziela, Portland, argued the cause for respondent. With him on the brief was Pozzi, Wilson & Atchison, Portland.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

JOHNSON, J.

**JOHNSON, J.**

This is an action at law in contract alleging that Multnomah County and the City of Portland agreed to pay plaintiff certain contingent supplemental pension benefits as part of his compensation as Director of Public Safety for the county.[1] The case was tried to the court and judgment was entered against the county for $15,752, together with a declaration that defendant pay plaintiff future supplemental benefits in the amount of $492.27 per month. The trial court dismissed the action against the city. The county appeals.

The county makes several assignments of error which can be summarized as follows: (1) There was insufficient evidence to support the trial court's findings of fact; (2) the contract between plaintiff and the county had not been ratified by the Board of County Commissioners; and (3) the county did not have legal authority to enter into the contract.

Plaintiff was appointed Director of Public Safety for the defendant county on February 4, 1970 and served in that capacity until March 14, 1974. He had previously served for over 30 years as a police officer for the City of Portland and held the rank of Captain. At the time of the appointment the county urgently required a new Director of Public Safety. The then Chairman of the Multnomah County Board of County Commissioners, James Gleason, asked plaintiff if he would accept the appointment. Plaintiff was concerned what effect his acceptance would have on his future retirement benefits. At that time under the City of Portland retirement plan a retiring police officer's pension was based upon a fixed percentage of the salary of a patrolman regardless of the officer's actual salary or rank. The city and the state legislature were

---

[1] The complaint alleges two causes of action. The first cause is for damages for breach of contract in the form of all supplemental pension benefits due and owing to the plaintiff. The second cause prays for a declaration of the future rights and obligations of the parties under the contract with respect to monthly supplemental pension benefits.

considering at that time legislation which would provide for "in-grade" retirement. Under in-grade retirement the pension benefit would be based upon a percentage of the officer's actual salary at the time of retirement. If plaintiff accepted the offered position with the county, this would have foreclosed him from enjoying the higher benefits that would result if the city or state adopted in-grade retirement.

The trial court found that the Chairman and the plaintiff entered into an agreement on February 4, 1970 under which the county agreed to pay plaintiff as retirement compensation an amount equal to the difference between the retirement benefits he would receive from the city and the amount he would receive as Director of Public Safety for the county under an in-grade retirement plan. The promise to pay the supplemental pension benefit was contingent upon passage by the city or legislature of an in-grade retirement plan for Portland police officers. The city adopted in-grade retirement in 1973.

■ The county argues that the plaintiff and the Chairman had not reached any agreement, but had only agreed on a general objective. There is undisputed evidence that the precise amount of benefits and the amount the plaintiff would contribute to the county's pension fund had not been agreed upon and indeed that the parties had understood that this would be worked out at a later date. The fact that such details were not finalized is understandable. The alleged promise was to pay a supplemental benefit subject to a condition subsequent. Until that condition occurred the amount of the retirement benefit could not be determined. Commencing on the first day of plaintiff's employment the county began withholding pension contributions from his paycheck. We conclude that the promise was sufficiently certain to be contractual and that there was substantial evidence to support the trial court's finding that a contract was made and the findings concerning the terms thereof.

Plaintiff concedes that in order for the contract to be valid, it had to be ratified by the Board of County Commissioners. Viewing the evidence most favorably to plaintiff what occurred was this: Following the negotiations between plaintiff and the Chairman, the Chairman informally contacted the other county commissioners and advised them that it was essential that there be an immediate appointment of a Director of Public Safety and the terms of his agreement with plaintiff. Each of the commissioners informally assented to the agreement. On the following day the Board approved the following order:

> "It appearing to the Board that the Chairman desires to appoint JOHN BARDELL PURCELL as the Director of the Department of Public Safety for Multnomah County; and the Board *now being fully advised in the premises,* does hereby

> "APPROVE the appointment of JOHN BARDELL PURCELL as Director of the Department of Public Safety effective upon the date to be determined by the Chairman." (Emphasis supplied.)

■ The only argument advanced by the county is that the order merely affirmed the appointment and not the contract. The ultimate question, however, is whether there was in fact a ratification of the contract. The evidence of the previous conversations between the Chairman and members of the Board, added to the fact that the order states that the Board was "now being fully advised in the premises," and that the county began making pension deductions from plaintiff's paycheck and continued to do so until late 1972 was sufficient evidence to support the trial court's finding that the order approving the appointment was also a ratification of the contract. The county does not cite any authority that there is a requirement of any particular formality to effectuate a ratification. *McKenna v. McHaley,* 67 Or 443, 136 P 340 (1913), cited by the plaintiff, holds on facts similar to the present case that an informal ratification is sufficient.

[ 489 ]

■ Finally, the county argues that the contract was illegal because it purports to be a legislative act. As we understand the county's position, it is not arguing that the terms of an employment contract are per se a legislative act requiring enactment of an ordinance. The county's argument in effect is that pensions for county employees are comprehensively governed by ordinances and that such ordinances cannot be modified or amended by contract. The only ordinance which the county cites which was effective at the time of making the agreement was Ordinance No. 25 which deals with pensions for "sworn law enforcement personnel."[2] The ordinance expressly does not cover personnel who enter county service at or above the age of 32. Plaintiff was over the age of 32. There is nothing, however, in the ordinance that expressly or impliedly excludes, either by another ordinance or contract, pension plan compensation for noncovered employees. The contract did not conflict with nor amend the ordinance.[3]

■ Defendant also makes assignments of error concerning the trial court's dismissal of the action against the City of Portland. There was substantial evidence to support the trial court's findings that no contract existed with the city.

Affirmed.

---

[2] It is not clear that the Director of the Department of Public Safety was within the classification of "sworn law enforcement personnel" as defined in the ordinance. Subsequent amendments to the ordinance make it clear that the Director is not in this classification. *See* Multnomah County Ordinance No. 29.

[3] The dissent relies on section 7.50 of the Multnomah County Home Rule Charter as indicating that any action of the county concerning pension benefits is legislative in nature. We do not believe that the charter provision mandates legislative action by the county. Presumably, the county could "provide a retirement system" by contract with all its employees. In any event, we do not reach this issue because the county neither cites nor relies on section 7.50. The county's reason for not relying on section 7.50 may have been a concern that this charter provision would be interpreted as imposing a duty on the county to provide some form of retirement plan for plaintiff's benefit. Section 7.50 states that "[t]he board of county commissioners *shall* provide a retirement system for *all* persons in the county service who desire retirement benefits in return for their services * * *." (Emphasis supplied.)

**THORNTON, J.** dissenting.

The majority concludes that the informal understanding of February 4, 1970, between plaintiff, ex-chairman Gleason and ex-mayor Schrunk to pay plaintiff certain contingent supplemental retirement benefits to be determined in the future, constituted a legally binding contract by the county to pay such benefits at this time.

For the following reasons I cannot agree:

First, under the express provisions of the Multnomah County Home Rule Charter the granting of retirement benefits is exclusively a legislative matter.

Section 7.50 of the charter provides:

"The board of county commissioners shall provide a retirement system for all persons in the county service who desire retirement benefits in return for their services to the county. The system shall afford them rights at least the equivalent of the rights that they have under the retirement system applicable to them under state law as it applies immediately before this charter takes effect."

Section 2.20 of the charter provides:

"Except as this charter or a state constitutional or statutory provision regarding the initiative and referendum provides to the contrary, the legislative power of the county shall be vested in and exercisable only by the board of county commissioners. Any other power of the county not vested by the charter elsewhere shall be vested in the board but may be delegated by it."

It follows from the foregoing provisions that before the county could be legally bound to pay any retirement benefits to plaintiff, or any other employe for that matter, the same must be duly authorized by legislative action (ordinance) of the board of county commissioners. Section 7.50, *supra.*

Next, the majority concludes that the Purcell-Gleason-Schrunk understanding was sufficient because it was "ratified" by the county commissioners

[ 491 ]

when they approved Purcell's appointment on February 5, 1970.

Under section 6.10(3) of the charter the chairman's appointments to directorship of county departments, including the sheriff, are subject to board approval.

The vote of the board confirming plaintiff's appointment on February 5, 1970, was on its face simply a performance by the board of its approval function under section 6.10(3) and nothing more. I do not see how this resolution can be stretched to the point of constituting either 'legislative action' within the meaning of sections 7.50 and 2.20 of the charter, or a valid and binding contract to pay supplemental retirement benefits if and when the same were to become authorized by act of the legislature and/or ordinance of the Portland City Council.

As I read the record, the most that can be said for the understanding between Purcell, Gleason and Schrunk was this: that if Purcell would accept appointment as sheriff, Gleason and Schrunk would see to it that Purcell would receive the full benefits of any retirement legislation which was then about to be introduced in the upcoming session of the state legislature, and similar proposals by the City of Portland and Multnomah County. I can find nothing in the charter that gives the chairman power to make any retirement contracts on behalf of the county. On the contrary sections 7.50 and 2.20 vest this power exclusively in the board of county commissioners. The rule applicable here was laid down by the Oregon Supreme Court in *State v. Des Chutes Land Co.,* 64 Or 167, 175, 129 P 764 (1913).

"* * * There is no apparent authority, so called, in a public officer whose duties are prescribed by statute like there would be in the case of an agent for a private party. The representative of the State must have actual authority in such cases. The agent of the State, acting under a public law, must find sanction for his doings in the statute itself; and parties dealing with such agent are bound, at their peril, to take notice of the enactment

[ 492 ]

conferring the agent's authority. A contract made by a public officer in excess of the provisions of the statute authorizing such contract is void, so far as it departs from or exceeds the terms of the law under which it was attempted to be negotiated. [Citing cases.]"

Next, even assuming arguendo that a majority of the county commissioners had authority to and did agree to this proposal, I do not think that the same was sufficiently definite in its terms to constitute a contract which would be legally binding upon the county. In other words the board of county commissioners could not approve an agreement the terms of which were not in existence and were in fact unknown to all concerned at the time and might never come into existence.

Further, even assuming arguendo that the Purcell-Gleason-Schrunk understanding was validly entered into and sufficiently definite in its terms, it might also be subject to attack because it would constitute an ultra vires agreement by the commissioners and Schrunk to enact legislation, namely, to enact city and county ordinances embodying those terms.

Next, the deduction of various sums from Purcell's paycheck which were matched by the county were not made in pursuance of the Purcell-Gleason-Schrunk understanding, contrary to the implication in the majority opinion. The evidence establishes that these deductions and payments were the result of an administrative misunderstanding by the county fiscal office, namely, that Purcell was to be covered under the county's ordinance (No. 25) providing retirement benefits for all sworn law enforcement personnel.

In the first place Purcell was not eligible for coverage under this ordinance. In the second place Purcell makes no claim under this ordinance. Thirdly, I fail to see how moneys withheld erroneously under an entirely separate ordinance can be construed as giving rise to an estoppel for a totally different proposition.

In summary, while the evidence establishes that the commissioners and the late Mayor Schrunk may have undertaken a moral obligation to provide ex-sheriff Purcell with these contingent retirement benefits, I can find no basis for holding that the county is under a legal obligation to pay such benefits at this time.

I am not prepared to say that the board of county commissioners and the Portland City Council could not have lawfully accomplished their objective by the passage of appropriate ordinances plus possibly a cooperative cost-sharing agreement between the city and county after the supplemental retirement benefits came into existence. However, the record shows that they failed to do so. The conclusion is inescapable to me that the courts are powerless to accomplish for them ex post facto what the parties failed to do themselves.

Finally, even assuming arguendo that the majority is correct in concluding that defendant Multnomah County is to be held liable on the Purcell-Gleason-Schrunk agreement, the majority does not go far enough.

If Multnomah County is liable on what was admittedly a three-way agreement, why should the City of Portland be relieved of liability thereon? If the majority's conclusion is correct in this respect, then the majority should also reverse that portion of the order and judgment of the trial court holding the City of Portland harmless from any liability on the agreement and hold Multnomah County and the City of Portland equally liable. I can see no rational basis for holding one party liable and not holding the others equally liable.

For the above reasons I respectfully dissent.