Argued and submitted November 9, 1995, decision of the Court of Appeals and the
judgment of the circuit court affirmed February 15, reconsideration denied
April 9, 1996

## DOUBLE EAGLE GOLF, INC.
an Oregon corporation,
*Petitioner on Review,*

*v.*

## CITY OF PORTLAND,
Bureau of Purchases and Stores,
Bureau of Parks and Recreation
and Charles Jordan, Director,
*Respondents on Review.*

(CC 9210-06907; CA A81933; SC S42314)

910 P2d 1104

John R. Faust, Jr., of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed the petition on behalf of petitioner on review.

Harry Auerbach, Deputy City Attorney, Portland, argued the cause and filed briefs on behalf of respondents on review.

UNIS, J.

## UNIS, J.

The issue in this case is whether ORS 279.029(1), which requires that a "public contracting agency shall award [a] contract to the lowest responsible bidder," applies to a public contracting agency's award of a concession contract of the kind involved in this case. We hold that it does not.

Plaintiff, Double Eagle Golf, Inc., brought this action in the circuit court against the City of Portland (City)[1] under ORS 279.067,[2] claiming that the City had violated ORS 279.029 when it accepted another company's bid to operate the concessions at a municipal golf course.[3] Both plaintiff and the City moved for partial summary judgment. The circuit court granted partial summary judgment for the City and dismissed plaintiff's complaint with prejudice. Plaintiff appealed, and the Court of Appeals affirmed. *Double Eagle Golf, Inc. v. City of Portland,* 134 Or App 60, 894 P2d 514 (1995).

Because the trial court granted partial summary judgment for the City, we must decide whether there are any genuine issues of material fact and whether the moving party (the City) is entitled to judgment as a matter of law. *See Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978) (stating principle). In resolving those issues, we view the record on summary judgment in the light most favorable to the party opposing the motion (plaintiff). *Id.*

In 1988, the Portland City Council amended the Portland City Code (PCC) Section 5.32.070 to establish a

---

[1] Plaintiff's complaint also named as defendants various agencies of the City, including the Bureau of Purchases and Stores, the Bureau of Parks and Recreation, and Charles Jordan, the director of the latter agency.

[2] ORS 279.067(1) provides in part:

"Any bidder adversely affected * * * may commence a suit in the circuit court for the county in which are located the principal offices of the public contracting agency, for the purpose of requiring compliance with, or prevention of violations of ORS 279.011 to 279.063, or to determine the applicability of ORS 279.011 to 279.063 to matters or decisions of the agency."

[3] Plaintiff also brought a claim under 42 USC § 1983. Plaintiff does not raise any issue on review regarding that claim.

procedure for awarding concession contracts at its municipal golf courses. In enacting that amendment, the City made the following findings:

"1.  The Bureau of Parks has entered park concession agreements through a process in which the Purchasing Agent has solicited bids in the normal manner *with the award going to the highest responsible bidder* as outline[d] in Section 5.32.070 of the City Code.

"2.  The Bureau of Parks recognizes the need to *attract golf concessionaires who have the ability to maximize revenues to the City* while at the same time being service oriented, with a proven reputation for dealing with the public in a way which reflects favorably on the Bureau.

"3.  Based on the importance of both the financial and service aspects of golf course operation, the code should be amended to allow a selection process for golf concessions contracts which gives equal weight to financial return for the City and to the proven service ability of the proposer." Portland City Ordinance No. 161118 (amending PCC § 5.32.070) (emphasis added).

Based on those findings, the Portland City Council amended the PCC to establish the following procedures for awarding concession contracts at public golf courses: A selection advisory committee would review contract proposals and recommend "the most advantageous proposal" to the superintendent of parks; the superintendent, in turn, would recommend that proposal to the commissioner in charge; after receiving a recommendation from the superintendent, the commissioner would grant a contract to the *"highest responsible bidder."* PCC § 5.32.070 (emphasis added).

In August 1992, the City issued a request for proposals to operate concessions at the City's Heron Lakes Golf Course. In the request for proposals, the City notified prospective bidders that the "goals of this contract *will be to maximize the revenue potential of the Heron Lakes Golf Course,* while at the same time maximizing the potential of the Heron Lakes Golf Course as a service to the public." (Emphasis added.) In September 1992, plaintiff submitted a bid to operate the concessions at Heron Lakes. Eventually, the City awarded that contract to another bidder,

Byron Wood Enterprises, Inc. (Wood), whose bid guaranteed less revenue to the City than did plaintiff's bid. Plaintiff then brought this action against the City.

In its complaint, plaintiff alleged that the "[City's] actions in authorizing a contract with Wood are in violation of ORS 279.029 in that Wood was not the lowest responsible bidder, and Plaintiff was." The city moved for partial summary judgment, arguing that ORS 279.029(1) did not apply to the award of a golf concession contract, and that motion was granted. Plaintiff appealed.

The Court of Appeals affirmed the judgment of the trial court, holding that, under ORS 279.051, golf concession contracts are not public contracts, but rather are contracts for personal services to which ORS 279.029(1) did not apply. *Double Eagle,* 134 Or App at 64. We allowed plaintiff's petition for review. We affirm the decision of the Court of Appeals and the judgment of the circuit court, but for different reasons.

The issue on review is whether ORS 279.029(1) applies to the award by the City[4] of a concession contract of the kind involved in this case. To resolve that issue, we begin with an analysis of the text and context of ORS 279.029(1). *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-11, 859 P2d 1143 (1993). ORS 279.029(1) provides in part that a "public contracting agency shall award [a] contract to *the lowest responsible bidder.*" (Emphasis added.) The text of that statute, particularly the phrase "lowest responsible bidder," indicates that the legislature intended to ensure that, when a public agency contracts for the *purchase of goods or services,* it will obtain those goods or services from the lowest responsible bidder. When a public agency *leases a concession* to a contractor, however, the primary purpose of the concession contract is to *raise* revenue for the agency. When a public agency leases a concession, therefore, it seeks to award the concession contract to the *highest* responsible bidder — in other words, the responsible bidder who will provide the agency with the *most revenue* in exchange for the right to operate the concession.

---

[4] The City is a public contracting agency under ORS 279.011(6).

The request for proposals in this case illustrates the foregoing proposition. Section 4 of the request for proposals, entitled "Contract Objectives," provided that one of "the goals of this contract will be to *maximize the revenue potential* of the Heron Lakes Golf Course." (Emphasis added.) To that end, the request for proposals requested that bidders include in their proposals, among other things, a guaranteed minimum annual payment to the City for revenue from the golf pro shop and restaurant businesses. As the request for proposals clearly demonstrates, the purpose of the golf concession contract was to raise the most possible revenue for the City from a responsible bidder. Plaintiff's complaint supports that conclusion. Plaintiff's complaint alleges that, notwithstanding plaintiff's claim that ORS 279.029(1) requires that a "public contracting agency award the contract to the *lowest responsible bidder,*" plaintiff should have been awarded the golf concession contract at issue here, *because* plaintiff's bid guaranteed the City *more annual income* than did the successful bid.[5]

Rules of statutory construction that bear directly on how to read the text of a statute support the conclusion that ORS 279.029(1) does not apply to the award of a concession contract. *See PGE*, 317 Or at 611 ("[i]n trying to ascertain the meaning of a statutory provision * * *, the court considers rules of construction of the statutory text that bear directly on how to read the text"). A rule of statutory construction prohibits this court from inserting into ORS 279.029(1) what has been omitted and omitting what has been inserted. *See* ORS 174.010 (stating principle). Had the legislature, in enacting ORS 279.029(1), intended to regulate the procedures for awarding concession contracts by public contracting agencies, it easily could have done so. In enacting that statute, the legislature could have required that public contracting agencies award concession contracts to the "highest responsible bidder." *See, e.g., Bevilacqua v. Clark,* 377 Pa 1, 103 A2d 661 (1954)

---

[5] Plaintiff's complaint alleges that its bid "guaranteed the City at least $84,000 per year income from services outside of greens fees and other facility generated income," while the successful bidder only "guaranteed the City $40,000 for Years One and Two and $43,000 for Years Three to Five."

(statute required competitive bidding for concession contracts where statute mandated that "all concessions * * * shall be awarded * * * to the highest responsible bidder"). Instead, the legislature required that "a public contracting agency shall award the contract to the lowest responsible bidder." ORS 279.029(1). That statutory text does not regulate the procedure for awarding concession contracts by public contracting agencies. "High" and "low" are not synonymous terms and are not interchangeable.

It may be that, as a matter of policy, public contracting agencies should award concession contracts to the "highest responsible bidder," the responsible bidder who would provide the agency with the most revenue from operating the concession. By doing so, the agency would ensure that the taxpayers would receive the highest monetary return in exchange for giving contractors the right to operate concessions in publicly-owned areas. We are not free, however, to insert in ORS 279.029(1) what the legislature has omitted. ORS 279.029(1) does not provide that public contracting agencies must award *concession* contracts to the *highest* responsible bidder. In summary, ORS 279.029(1) does not regulate the procedure for awarding concession contracts of the kind involved in this case by public contracting agencies.[6]

Because there are no facts in dispute and because we conclude that ORS 279.029(1) does not, as a matter of law, apply to the award of a concession contract by a public contracting agency, we hold that the trial court did not err

---

[6] In *Lasday v. Allegheny County,* 499 Pa 434, 453 A2d 949 (1982), the Pennsylvania Supreme Court was confronted with the same issue presented here. In that case, a county failed to utilize competitive bidding when leasing concession space at the county airport. The plaintiff brought an action under County Code Section 2001(a), which provided that "all contracts * * * shall not be made except with and from the *lowest responsible bidder* meeting specifications." *Id.* at 440 (emphasis added). The Pennsylvania Supreme Court analyzed that statute and concluded:

"As the Legislature's use of the phrase 'lowest responsible bidder' makes clear, section 2001(a) is addressed to those situations where, unlike here, the County is spending public funds and thus should be attempting to secure for the taxpayers the least costly contract. Here, as lessor, the County is not spending money, but receiving it. The 'lowest responsible bidder' requirement is thus manifestly inapposite to this case, and if applied, would lead to the absurd result requiring the County to award its concession contracts to the concessionaire who promised to pay the County the least rent and the smallest concession fee." *Id.*

when it granted partial summary judgment to the City. Accordingly, we affirm the decision of the Court of Appeals and the judgment of the circuit court, but for different reasons.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.