Argued and submitted May 26, affirmed December 9, 1998, petition for review allowed May 25, 1999 (328 Or 594)

Gary McLEAN,
*Appellant,*

*v.*

BUCK MEDICAL SERVICES, INC.,
dba American Medical Response Northwest, Inc.,
and A. A. Ambulance Service of Portland, Inc.,
dba American Medical Response Northwest, Inc.,
*Respondents,*

*and*

MULTNOMAH COUNTY,
*Respondent.*

(9601-00413; CA A96826)

971 P2d 462

Ward Green, Judge pro tempore.

Mark E. Griffin argued the cause for appellant. With him on the brief was Griffin McCandlish.

Stephen F. Crew argued the cause for respondents. With him on the brief was O'Donnell, Ramis, Crew, Corrigan & Bachrach, LLP.

No appearance for respondent Multnomah County.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff, the representative of a class of employees of defendants Buck Medical Services, Inc., and A. A. Ambulance Service of Portland, Inc., appeals from the trial court's allowance of defendants' motion for summary judgment. Plaintiff sought payment of overtime wages, asserting that defendants entered into public contracts to serve as the exclusive providers of emergency ambulance services in Multnomah and Clackamas counties and that defendants were, therefore, required to compensate plaintiff in compliance with the public contract overtime wage requirements of ORS chapter 279. We conclude that the contracts at issue here are "contracts for personal services" within the meaning of ORS 279.051 and, thus, are not subject to the overtime provisions of ORS 279.316 and ORS 279.334. Consequently, we affirm.

Viewed in the light most favorable to plaintiff, the nonmovant,[1] the record discloses the following material facts: On July 14, 1994, Clackamas County executed an "Agreement for Emergency Ambulance and Advanced Life Support Services" with defendant Buck Medical Services, Inc. (Buck), doing business as American Medical Response Northwest, Inc. (AMR). Clackamas County selected Buck on the basis of its credentials, qualifications, response time commitments, level of clinical sophistication, fiscal strength, equipment management and maintenance, key personnel, employee wage and benefit structure, and proposed costs and charges to users.

On July 20, 1995, Multnomah County executed an "Agreement for Exclusive Emergency Ambulance Services" with defendant Buck. In selecting Buck, Multnomah County applied the same criteria as did Clackamas County.[2]

---

[1] In reviewing the allowance of summary judgment, we state the facts in the light most favorable to the nonmovant, making all reasonable inferences in the nonmovant's favor, and review those facts to determine if more than one reasonable conclusion may be drawn. If so, summary judgment was improper. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

[2] Plaintiff also named A. A. Ambulance Service of Portland, Inc., (AA) as a defendant. Like Buck, AA does business as "American Medical Response Northwest, Inc." However, AA was not a party to either the Clackamas or Multnomah

The Clackamas County and Multnomah County ambulance service agreements are nearly identical. Both agreements identify the provider, Buck, as the exclusive provider of emergency ambulance services, including all necessary personnel, equipment and materials, within a specified geographical area. Both agreements specify that the provider "shall be, and is, an independent contractor," with the sole responsibility for all matters relating to payment of employees and compliance with regulations governing payment of employees. There is, however, one significant difference between the agreements: The Clackamas County agreement provides that "Oregon public contracting laws ORS 279.310 through 279.320 are incorporated herein by this reference." That language was included in the penultimate draft of the Multnomah County agreement but is not present in the final agreement.

Plaintiff is a paramedic certified by the State of Oregon. As an employee of both defendants, he worked in both Clackamas and Multnomah counties under the agreements. He filed this action as an individual and became the class representative when the parties stipulated to class certification.[3] The class, which consists of employees who worked under the Clackamas and Multnomah county agreements,[4] includes administrative personnel, dispatchers, mechanics, support staff, paramedics, and emergency medical technicians. Under both the Clackamas and Multnomah county agreements, members of the plaintiff class worked more than eight hours a day, as well as shifts on Saturdays, Sundays, and legal holidays.[5] Plaintiff brought this action,

---

county agreements, and its role, if any, in the underlying dispute, is unclear. In all events, our disposition as to Buck applies equally to AA.

[3] Because plaintiff is a class representative, all subsequent references to plaintiff refer to the class as a whole, unless context requires otherwise.

[4] The class does not include individuals who are exempt from overtime requirements pursuant to ORS 653.020(3) and 29 USC § 213(a)(1).

[5] Members of the plaintiff class have also worked in excess of the 40-hour statutory weekly maximum for work performed under personal services contracts. ORS 279.316(2). On appeal, plaintiff argued for the first time that, even if the agreements are personal services contracts, plaintiff is entitled to overtime for hours worked in excess of 40 hours a week. The record reveals that plaintiff did not make this argument in the trial court, and, thus, it is not susceptible to our review. *See* ORAP 5.45(2); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991) ("[B]efore an appellate court may address whether a trial court committed

asserting that the Clackamas and Multnomah county contracts were "public contracts" for the purposes of ORS 279.316 and ORS 279.334; that under those statutes, defendants were obligated to pay members of the plaintiff class time-and-a-half for hours worked in excess of eight hours a day or on Sundays and holidays; and that defendants had violated those statutes by failing to pay the requisite overtime.

ORS 279.316, prescribing a "[c]ondition concerning hours of labor," provides, in part:

"(1)(a)    Every public contract shall also contain a condition that no person shall be employed for more than 10 hours in any one day, or 40 hours in any one week, except in cases of necessity, emergency, or where the public policy absolutely requires it, and in such cases, *except in cases of contracts for personal services as defined in ORS 279.051*, the employee shall be paid at least time and a half pay:

"(A)    For all overtime in excess of eight hours a day or 40 hours in any one week when the work week is five consecutive days, Monday through Friday; or

"(B)    For all overtime in excess of 10 hours a day or 40 hours a week when the work week is four consecutive days, Monday through Friday; and

"(C)    For all work performed on Saturday and on any legal holiday specified in ORS 279.334.

"* * * * *

"(2)    In the case of contracts for personal services as defined in ORS 279.051, the contract shall contain a provision that the employee shall be paid at least time and a half for all overtime worked in excess of 40 hours * * *." (Emphasis added.)

ORS 279.334, regarding "[m]aximum hours of labor on public contracts; holidays; exceptions; liability to workers," provides, in part:

"(1)(a)    In all cases where labor is employed by the state, county, school district, municipality, municipal corporation, or subdivision, through a contractor, no person

---

an error in any of the particulars of the trial of a case, the adversely affected party must have preserved the alleged error in the trial court * * *.").

shall be required or permitted to labor more than 10 hours in any one day, or 40 hours in any one week, except in cases of necessity, emergency, or where the public policy absolutely requires it, in which event, the person or persons so employed for excessive hours shall receive at least time and a half pay:

"* * * * *

"(6)    *This section shall not apply to contracts for personal services as defined in ORS 279.051 * * *.*" (Emphasis added.)

In addition to the statutory claims, plaintiff also alleged related claims for breach of contract, asserting that the plaintiff employees were third-party beneficiaries of the Clackamas and Multnomah county contracts. In particular, plaintiff alleged that: (1) the contracts between the counties and defendants incorporated Oregon's public contract law either expressly or by operation of law; (2) members of the plaintiff class were intended beneficiaries of those contracts; and (3) defendants had breached the contracts by violating ORS 279.316 and ORS 279.334.

Defendants moved for summary judgment, asserting that the agreements between defendants and the counties are "franchises"[6]—not public contracts subject to ORS chapter 279—and that even if the agreements are "public contracts" subject to ORS chapter 279, they are "contracts for personal services" and are thereby exempt from the overtime sought by plaintiff. Plaintiff countered that the agreements are public contracts for the purchase of labor and materials, not "franchises," and are not "contracts for personal services." The trial court granted defendants' motion for summary judgment:

"I conclude that the contracts between the counties and American Medical Response Northwest, Inc. ('AMR') are in the nature of franchise agreements which were not

---

[6] Specifically, defendants assert that the counties' agreements with defendants are "no different than franchises granted to garbage haulers, PGE, NW Natural Gas and cable television companies," in that the counties do not purchase anything from defendants under the agreements, and use the agreements to regulate provision of emergency ambulance services. They argue that those "franchises" do not fit within the statutory definitions of "public contract," ORS 279.011(6) and ORS 279.310(1), and therefore are not subject to Oregon public contracting laws.

intended to be governed by the Oregon Public Contracts Law, ORS [c]hapter 279 * * *.

"Also, I conclude that these contracts contemplated either professional services or personal services, as those terms were defined by the counties * * * [and] that the contracting parties believed they were contracting for personal services and did not intend to invoke the overtime wage requirements of the Public Contract Law."

On appeal, plaintiff argues that the trial court erred in granting defendants' motion for summary judgment against plaintiff's claims under ORS 279.316 and ORS 279.334.[7] He contends that the Clackamas and Multnomah county agreements are subject to the overtime provisions of Oregon public contract law because they fit within the definitions of "public contract" in ORS 279.310(1) and ORS 279.011(6). Plaintiff emphasizes, moreover, that the Clackamas County agreement specifically incorporates the provisions of ORS 279.310 through ORS 279.320. Defendants argue, and plaintiff disputes, that neither agreement is a public contract subject to ORS chapter 279, but is, instead, a "franchise." Defendants assert that, even if the agreements are "public contracts," they are "contracts for personal services" and, thus, under ORS 279.316(2) and ORS 279.334(6), are exempt from the overtime wage requirements plaintiff seeks to enforce.

For the reasons explained in the balance of this opinion, we agree with defendants that, even assuming that the Clackamas and Multnomah county agreements are "public contracts," they are "contracts for personal services as defined in ORS 279.051," and, thus, are not subject to the overtime requirements of ORS 279.316 and ORS 279.334. Consequently, we need not, and do not, resolve whether those agreements are, in fact, "public contracts."

■    ORS 279.316 and ORS 279.334 exempt "contracts for personal services *as defined in ORS 279.051*" from the

---

[7] We note that plaintiff also assigns error to the trial court's disposition of the breach of contract claims but offers no separate analysis as to those claims. That is, plaintiff suggests no reason why the contract claims should be analyzed differently from the statutory claim. Accordingly, our disposition of the latter controls the former.

overtime wage requirements. (Emphasis added.) However, ORS 279.051 does not so much *define* "contracts for personal services" as it does authorize other administrative bodies to do so:

"(1) Except as provided in ORS 279.712, public agencies may enter into contracts for personal services. * * * Each public agency authorized to enter into personal service contracts shall create procedures for the screening and selection of persons to perform personal services.

"(2) The Director of the Oregon Department of Administrative Services or *a local contract review board by ordinance, resolution, administrative rule or other regulation may designate certain service contracts or classes of service contracts as personal service contracts.*" (Emphasis added.)

Both Clackamas and Multnomah counties have local contract review boards,[8] and, pursuant to ORS 279.051(2), the contract review board for each county has adopted by local ordinance rules that, *inter alia*, define certain contracts as "contracts for personal services." Plaintiff argues that: (1) those rules do not, in fact, designate emergency ambulance service contracts as "contracts for personal services" within the meaning of ORS 279.051; and (2) to the extent the rules purport to designate or include ambulance service contracts as "contracts for personal services," they exceed the scope of the authority conferred under ORS 279.051. Neither argument is availing.

The gist of plaintiff's first argument is:

"Had either Multnomah or Clackamas County wished to designate *ambulance service* contracts as personal service contracts, they could have done so by using the term

---

[8] The "local contract review board" referred to in ORS 279.051 is an administrative entity authorized by ORS 279.055:

"(1) Every county by ordinance may create a local contract review board for the county. * * *

"* * * * *

"(5) Each board created under this section shall have rulemaking authority to carry out the powers and duties of the board under ORS 279.011 to 279.063."

In both Clackamas and Multnomah counties, the Board of Commissioners acted as the local contract review board.

'ambulance service' in their ordinances. That they did not [do so] is an indication that the counties did not intend that ambulance service contracts be designated as personal or professional service contracts." (Citation omitted; emphasis in original.)

Defendants counter that both counties' rules designate broad classes of contracts as personal services contracts and that certain of those broad classes include, by definition, contracts for emergency ambulance services. The pertinent Clackamas County rule, adopted in January 1994, states, in part:

"The following are personal service contracts:

"(a)  Contracts for services performed as an independent contractor in a professional capacity, including but not limited to the services of an accountant; attorney; architectural or land use planning consultant; physician or dentist; registered professional engineer; appraiser or surveyor; passenger aircraft pilot; aerial photographer; timber cruiser; data processing consultant or broadcaster.

"* * * * *

"(f)  *Contracts for human services provided by independent contractors in the areas of* aging and senior services, mental health services, *health services, social and emergency services*, child care services, and temporary shelter services." Clackamas County Local Contract Review Board Rule 110-092 (emphasis added).

The Multnomah County rules use the term "professional" service contract, instead of "personal" service contract, and define a "professional services contract" as "*a contract for services performed as an independent contractor in a professional capacity* as defined in AR 10.092." Multnomah County Public Contract Review Board Administrative Rule 10.000(13) (emphasis added). Multnomah County Public Contract Review Board Administrative Rule 10.092 provides, in part:

"(a)  The following are professional service contracts:

· "(1)  Contracts for services performed as an independent contractor in a professional capacity including, but not limited to, the services of an accountant, attorney, architect, architectural or land use planning consultant, physician or dentist, registered professional engineer, appraiser

or surveyor, passenger aircraft pilot, aerial photographer, timber cruiser, data processing consultant, or broadcaster.

"* * * * *

"(5) *Contracts for* educational, *human custodial care services and other human services.*" (Emphasis added.)

In interpreting those rules, our role is "the same as * * * in determining the meaning of a statute, *viz.,* to determine the meaning of the words used, giving effect to the intent of the enacting body." *Abu-Adas v. Employment Dept.,* 325 Or 480, 485, 940 P2d 1219 (1997). *See also Perlenfein and Perlenfein,* 316 Or 16, 20, 848 P2d 604 (1993); ORS 174.020. The text of the rule itself is the best evidence of the enacting body's intent and is the starting point for our inquiry. *Abu-Adas,* 325 Or at 485. At the first level of our analysis, we also consider the context of the rule, including other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes. *Id.; see generally PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993) (establishing an analogous analytical process for interpretation of statutes). If the intent of the enacting body is clear after consideration of both text and context, our inquiry ends. *Abu-Adas,* 325 Or at 485. With regard to the Clackamas County rule, Buck asserts that the broad categories of "health services" and "emergency services" both include emergency ambulance service contracts as personal services contracts. Because neither term is defined by the rules themselves, we look to the "plain, natural, and ordinary meaning" of these terms. *PGE,* 317 Or at 611.

■     "Health" is commonly defined as "the condition of an organism or one of its parts in which it performs its vital functions normally or properly." *Webster's Third New Int'l Dictionary,* 1043 (unabridged ed 1993). An "emergency" is "a sudden bodily alteration such as is likely to require immediate medical attention." *Id.* at 741. The term "service" is defined, *inter alia,* as "useful labor that does not produce a commodity." *Id.* at 2075. Pursuant to the Clackamas County agreement, Buck is responsible for providing emergency medical treatment, care, and transportation to the ill, injured, and disabled. Thus, the emergency ambulance services provided by Buck fall easily within "health services" and

"emergency services" as those terms are commonly understood. Nothing in the context of the Clackamas County rules, their authorizing ordinance, or the overarching statutory scheme contradicts that result.

The analysis with respect to the Multnomah County local contract review board rules and emergency ambulance services contract is similar. Because the rules do not define the operative terms—"human custodial care services and other human services"—we look to the common usage of those terms. Risking rote over-reliance on dictionary definitions, "custodial" is defined—and fairly understood—as "relating to or marked by guardianship or maintaining safely," *id.* at 559, and "care" means "responsibility for or attention to safety and well-being." *Id.* at 338. The term "human custodial care services," given its plain meaning, suggests a broad class of human care services involving human health, safety, and welfare. In addition, the rule includes an even broader designation of a catch-all class of contracts for "other human services." As under the Clackamas County agreement, Buck is obligated to provide emergency medical treatment, transportation, and care for the ill, injured, and disabled under the Multnomah County agreement. Accordingly, Buck's services constitute "human custodial care services" or "other human services," and, thus, fall within AR 10.092(a)(1).[9]

---

[9] Plaintiff asserts that construing the Clackamas and Multnomah rules as designating emergency ambulance services as personal service contracts is to "insert into the [rules] what has been omitted." ORS 174.010. We disagree. When a statute, ordinance, or rule uses broad terms to define a class, and there is no "affirmative showing that the narrower meaning actually was intended by the drafters," we take the enacting body at its word and give the term its ordinary meaning. *South Beach Marina, Inc. v. Dept. of Rev.*, 301 Or 524, 531, 724 P2d 788 (1986) (the term "watercraft" as used in ORS 307.120(1) is expansive, and its plain and ordinary meaning necessarily includes pleasure boats). Nothing in the Clackamas or Multnomah county rules suggests, much less dictates, a narrower reading of the text than that applied here.

We note, moreover, that the counties' use of such broad categories comports with at least one justification offered for amending ORS 279.316 and ORS 279.334 to exempt "contracts for personal services" as defined by ORS 279.051. Or Laws 1989, ch 572, §§ 1, 2. *See* Testimony, Senate Labor Committee, SB 40, April 3, 1989, Ex A (statement of Jon Yunker, Administrator of Budget and Management Division of the Executive Department; exemption of personal service contracts from overtime requirements was necessitated, in part, to prevent a substantial increase in labor costs resulting from irregular hours in providing health services).

Plaintiff argues, nevertheless, that, regardless of the meaning or content of "health services" and "emergency services" (in the Clackamas County rule) or "human custodial care services" and "other human services" (in the Multnomah County rule), the Clackamas and Multnomah county agreements are not personal services contracts because those rules pertain only to services "provided by" or "performed by" an "independent contractor." Plaintiff reasons that, because members of his class are not independent contractors, the agreements do not meet the rules' requirements. We disagree. The relevant inquiry is not whether every employee who works under the agreements is an independent contractor, but rather whether the party contracting with the public agency—in this case, Buck—is acting as an independent contractor. We do not understand plaintiff to dispute that *Buck* is an independent contractor, as the agreements explicitly describe it. We thus conclude that defendants' contracts are, in fact, personal services contracts within the definition of the pertinent local contracting rules.

We turn, then, to plaintiff's second broad argument: Even if the counties purported to treat the agreements for emergency ambulance services as personal services contracts, that treatment was erroneous because the services rendered are not, in fact, "professional." At the very least, plaintiff asserts, there are disputed issues of fact concerning the characteristics of the services provided so as to preclude summary judgment. The parties devote considerable effort referring to affidavits describing the "discretion" (or lack thereof) implicated in providing emergency ambulance services and invoking authority, including under the federal wage and hour laws, for their positions.[10]

■    We view the inquiry somewhat differently. The issue is not whether reasonable minds might differ about whether EMTs, ambulance drivers, or others employed under the contracts are "professionals," exercise "professional judgment," or provide "professional services." Rather, the question is whether the Clackamas County and Multnomah County

---

[10] *See, e.g., Quirk v. Baltimore County*, 895 F Supp 773 (D Md 1995); *Klein v. Rush-Presbyterian-St. Luke's Medical Center*, 990 F2d 279 (7th Cir 1993); US Department of Labor, Occupational Outlook Handbook (1996).

Boards of Commissioners, acting as local contract review boards, exceeded their authority under ORS 279.051 in treating agreements for emergency ambulance services as "contracts for personal services." We conclude that they did not. *See Double Eagle Golf, Inc. v. City of Portland*, 134 Or App 60, 894 P2d 514 (1995), *aff'd on other grounds* 322 Or 604, 910 P2d 1104 (1996).

In *Double Eagle*, the plaintiff, who had unsuccessfully bid to operate concessions at the Heron Lakes golf course, asserted, in part, that the City of Portland's award of the contract to a competitor violated ORS 279.029(1), which requires that a "public contracting agency shall award [a] contract to the lowest responsible bidder." The services performed by the golf concessionaire under the contract included running a short order restaurant, a pro shop, and a cart rental operation, in addition to providing golf instruction.

The trial court entered summary judgment for the City, and we affirmed. In affirming, we noted that, before awarding the contract, the City Council, acting as the local contract review board under the authority of ORS 279.051, designated golf course concession contracts as personal services contracts. We consequently concluded that the contracting process was not subject to ORS 279.029(1):

> "Plaintiff does not contest that the city ordinance *purports* to designate golf concession contracts as personal service contracts. It argues, however, that they simply are *not* personal service contracts, and that the city cannot define them as something they are not. Relying on OAR 125-310-092, plaintiff asserts that golf concessionaires are not like physicians, engineers, appraisers and others who fall within the broad rubric of providers of personal services. The difficulty with plaintiff's argument is that it disregards the express statutory authority that the city council enjoys under ORS 279.051 to determine what contracts for services are personal service contracts.

> "We might agree with plaintiff's premise that there are lengths to which a local contract review board may not go under ORS 279.051 to excuse the local government from the bid law requirements by expanding the definition of 'personal service.' However, this case does not present that

problem. The city's findings in support of its ordinance demonstrate an adequate basis for emphasizing the personal service ability of the applicant in awarding golf concession operation contracts, and for removing the contracts from the usual competitive bidding requirements pursuant to ORS 279.051. That statute clearly allows for some local latitude in defining when personal qualifications should be a dominant or contributing factor in the contractor selection process. We find no basis for concluding that the city exceeded the permissible degree of latitude in enacting the ordinance in question or in awarding this contract pursuant to it." *Double Eagle*, 134 Or App at 64 (emphasis in original).

The Supreme Court subsequently affirmed on different grounds, *viz.*, that awards of concession contracts are not subject to ORS 279.029(1). *Double Eagle*, 322 Or at 604, 610. Nothing in the Supreme Court's analysis or holding called into question *our* reasoning in *Double Eagle*. We adhere to that reasoning.

That reasoning is dispositive here. Under ORS 279.051, Clackamas and Multnomah counties had considerable "latitude in defining when personal qualifications should be a dominant or contributing factor in the contractor selection process." *Double Eagle*, 134 Or App at 64. The record discloses, moreover, that Buck's "personal qualifications," including "credentials and experience" and "level of clinical sophistication" were, in fact, material considerations in the request for proposal process.[11] Just as the city in

---

[11] The Clackamas County request for proposals from ambulance service providers explained that all proposals were to be ranked on a 300-point scale, with points awarded on each of 14 criteria, including:

"1. Proposer's credentials and qualifications - 40 points

"* * * * *

"3. Response time commitments - 25 points

"4. Level of clinical sophistication - 15 points

"* * * * *

"6. Equipment maintenance and management - 10 points

"* * * * *

"8. Key on-site personnel - 15 points."

Multnomah County used the same 300-point scale, and similar criteria, to evaluate the proposals it received from ambulance service providers.

*Double Eagle* acted within its authority in designating contracts for golf concession-related services as "contracts for personal services," the counties here did not exceed their authority in so designating contracts for the provisions of emergency ambulance services. There was no error.

Affirmed.