Argued and submitted August 1, 2000, reversed and remanded May 9, 2001

# MORROW COUNTY HEALTH DISTRICT,
a Municipal corporation,
dba Pioneer Memorial Hospital,
*Respondent,*

*v.*

# ACCOUNT CONTROL CONSULTANT ENTERPRISES, INC.,
an Oregon corporation,
*Appellant.*

# ACCOUNT CONTROL CONSULTANT ENTERPRISES, INC.,
an Oregon corporation,
*Third-Party Plaintiff,*

*v.*

Cara OSMIN,
individually,
*Third-Party Defendant.*

98-CV-170; A105718

23 P3d 1004

Lisa E. Lear argued the cause for appellant. With her on the briefs were John M. Junkin, John R. Osburn and Bullivant Houser Bailey.

Darleen R. Darnall argued the cause for respondent. With her on the brief were Robert D. Newell and Davis Wright Tremaine.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff is a public health district, organized under ORS chapter 440, which operates Pioneer Memorial Hospital. In 1991, plaintiff entered into a management agreement with Western Health Resources (WHR) to manage the hospital. With plaintiff's concurrence, WHR assigned Susan Brock to serve as the hospital's administrator. The management agreement authorizes WHR, *inter alia*,

"[i]n the name of and for the account of the Hospital [to] negotiate, execute and supervise such contracts or agreements as may be necessary or advisable relative to:

"1.   The furnishing of utilities, non-medical services, concessions and supplies for the maintenance and operation of the Hospital.

"* * * * *

"All such agreements involving expenditures by the Board in excess of $10,000 or for periods longer than twelve (12) months shall require prior approval by the Board, which approval shall not be unreasonably withheld."

In the summer of 1998, at Brock's initiation, an agreement was formed in the names of plaintiff and defendant whereby defendant would administer the patient accounts receivable for the hospital. The agreement was for a term of two years, and defendant's compensation was for more than $10,000. Defendant began performing its services pursuant to the instrument in August. In October, Brock resigned as administrator and, in late November, plaintiff purported to terminate its relationship with defendant.

Plaintiff then brought this declaratory judgment action, seeking to recover the moneys it had paid defendant and seeking a declaration that the agreement between the two was void because it had not been subjected to the competitive bidding requirements for public contracts under ORS chapter 279 and because the agreement assertedly had not been approved by plaintiff's board. Defendant denied the allegations, counterclaimed for breach of contract and *quantum meruit*, and interposed the affirmative defense of estoppel. As the focus of that defense, defendant asserted, in the

alternative to its contention that the agreement was lawfully consummated, that plaintiff had clothed Brock with apparent authority and was bound by her actions.

Plaintiff moved for summary judgment on its claim. The trial court granted the motion, agreeing with plaintiff on the competitive bidding, the unapproved contract, and the apparent authority issues. Thereafter, defendant voluntarily dismissed its counterclaim pursuant to ORCP 54 A. A final judgment was entered, and defendant appeals, assigning error to the granting of plaintiff's motion for summary judgment.

Defendant contends that the agreement was not subject to the competitive bidding requirements because it was a contract for personal services. *See* ORS 279.015(2); ORS 279.051; *see also Double Eagle Golf, Inc. v. City of Portland*, 134 Or App 60, 894 P2d 514 (1995), *aff'd on different grounds* 322 Or 604, 910 P2d 1104 (1996). Defendant emphasizes the provisions of the agreement that require it to:

"Implement a mutually agreed upon financial policy for payment arrangements. That policy will include the introduction of long term payment contracts on patient balance payment arrangements that exceed ninety (90) day liquidation.

"Implement thorough procedures in its attempt to achieve maximum receivables recovery. When it has been determined that further efforts should be from a professional collection service, ACCENT will refer the account on provider's behalf to a mutually agreed upon collection service."

(Capitalization modified.)

Both parties rely on state and local rules pertaining to the exemption from bidding for personal service contracts. Initially, plaintiff considers itself to have found decisive support in OAR 125-020-0130(5)(a) which, plaintiff asserts, specifically excludes "collection" services like the bill collection services in question. The cited rule provides, as relevant:

"(5) The Agency should use a Public Contract, as defined in ORS 279.011(6), rather than a Personal Services Contract, if:

"(a) The work has traditionally been performed by Contractors selected primarily on the basis of price: e.g., such work as construction services, equipment repair and maintenance services, food services, *collection and hauling services*, supplies and materials services, and similar services * * *."

(Emphasis supplied.) Defendant answers that, seen in context, the word "collection" refers to garbage and refuse, not to accounts receivable. We agree with defendant.

More generally, plaintiff relies on OAR 125-020-0130(1), which provides, as material:

"A contract for 'Personal Services' is a contract that calls for specialized skills, knowledge and resources in the application of highly technical or scientific expertise, or the exercise of professional, artistic or management discretion or judgment. Qualifications and performance history, expertise, knowledge and creativity, and the ability to exercise sound professional judgment are typically the primary considerations when selecting a Personal Services Contractor, with price being secondary."

Plaintiff argues that, read together with the illustrative examples of traditional professional relationships in subsection (6) of the rule, this "agreement * * * for standard collection services" does not qualify. Defendant disagrees and takes the view that *at least* the quoted language from the agreement required "management discretion or judgment" on defendant's part.

The parties also disagree about the import of the similar provisions in plaintiff's own local policies. The trial court found the local provisions decisive, explaining in its opinion letter:

"The list of classes of contracts which are exempt include[s] contracts involving:

" '1.   independent contractors of professional services;

" '2.   artistic services;

" '3.   specialized, creative, research-oriented, noncommercial services;

" '4.   consultant services; and

" '5.   educational and human custodial care services[.]

" 'The list of classes <u>not</u> exempt include contracts involving:

" '1.   professional services which are predominately for a product;

" '2.   the supplying of labor services which can generally be done by any competent worker;

" '3.   trade related activities considered labor and materials contracts; and

" '4.   trade related services even though a specific license is required to do the work.

"   '* * * * *'

"The services provided by defendant do not appear to the court to be the type of professional or creative classes of skills enumerated within the listed policies and procedures as exempt from competitive bidding. Rather they are the supplying of trade related labor services of the classes listed as not exempt. Thus the contract does not comply with policies, rules or statutes relating to competitive public bidding and is voidable by plaintiff."

(Underscoring in original.)

■     We do not agree with plaintiff and the trial court, at least insofar as they maintain that this issue can be decided as a matter of law in plaintiff's favor on a summary judgment motion. On their face, the contractual requirements that defendant "implement a mutually agreed upon financial policy for payment arrangements," and that it "implement thorough procedures in its attempt to achieve maximum receivables recovery" entail specialized skills and managerial judgment. Conceivably, the evidence at trial might show that defendant's tasks are in fact more menial than their delineation in the agreement would suggest. We need not and may not decide that, however. The only question before us is whether there was conclusive evidence in the summary judgment record that defendant's services were not of the kind that are exempt from bidding under the personal services rubric. We hold that there was not.

■     The next issue that the parties dispute is sometimes described by one or both of them as whether Brock had actual

authority to contract with defendant on plaintiff's behalf. In our view, however, the parties' more modest formulation of the issue, *i.e.*, whether there was evidence that the district board in fact approved the agreement that Brock reached, is determinative for purposes of our review of the summary judgment.

Under ORS 440.360(1)(b), plaintiff has the authority to "contract and be contracted with." ORS 440.360(1)(g) authorizes it "[t]o appoint subordinate officers, agents, employees, staff and other personnel * * * and to prescribe their duties." The contract with WHR expressly authorizes the latter to enter into agreements of this kind with defendant, subject to Board approval. It is not disputed that Brock's actions here were taken under color of that contract or that her authority was coextensive with WHR's contractual authority. In sum, Brock had authority to enter into the disputed agreement for plaintiff if the board approved it.

Defendant points to two items of evidence, either predating or contemporaneous with Brock's subscription of the agreement, that are probative of its having obtained board approval. First, defendant's manager, Mary Plaisance, stated in her affidavit that, before the agreement was executed, she met with Brock, plaintiff's board chairperson Cara Osmin, and another official of plaintiff, Dan Grant. According to Plaisance:

> "I recall Ms. Osmin reading through the contract, and commenting that 'we are glad you are here,' and 'we think it is a really good rate.' Mr. Grant suggested to Ms. Brock and Ms. Osmin that the contract be taken to [plaintiff's] Board of Directors, and Ms. Osmin responded that 'the Board has already approved it. We are going forward.' "

Second, defendant relies on a detailed description of the agreement, beginning with the statement that defendant "*has* contracted with the District" in the minutes of a board meeting held on the same day that Plaisance testified she met with Osmin, Brock and Grant. (Emphasis supplied.) Defendant contends that that evidence creates a genuine question of material fact as to whether the board approved the agreement and, therefore, whether its execution was within Brock's actual authority.

Plaintiff offers a number of responses, but they appear to us to fall into three slots. First, plaintiff *appears* to suggest that the evidence on which defendant relies is not sufficient to give rise to a question of fact, because it is overwhelmed by other evidence, including the direct testimony of Osmin and another board member that the board did not act on or approve the agreement. In our view, however, the conflicting evidence is simply that, conflicting, and is a reason why there *is* a genuine issue of material fact rather than that there is not.

Plaintiff's second point is that the question is not subject to resolution by the kind of evidence on which defendant relies. Rather, according to plaintiff, the board's action approving the agreement had to take the form of a formal vote and had to be memoralized as such in the board's minutes. Plaintiff points out that no such vote is reflected in the minutes. Plaintiff relies on ORS 192.650(1), a provision of the Public Meeting Law, which requires the minutes of a governing body meeting to relate:

"(a)  All members of the governing body present;

"(b)  All motions, proposals, resolutions, orders, ordinances and measures proposed and their disposition;

"(c)  The results of all votes and, except for public bodies consisting of more than 25 members unless requested by a member of that body, the vote of each member by name;

"(d)  The substance of any discussion on any matter; and

"(e)  Subject to ORS 192.410 to 192.505 relating to public records, a reference to any document discussed at the meeting but such reference shall not affect the status of the document under ORS 192.410 to 192.505."

Plaintiff's reliance is misplaced. ORS 192.650(1)(c) requires that all votes be reflected in the minutes; however, it is not a substantive provision that requires that all actions or any particular action be taken by a formal vote. In *Purcell v. City of Portland*, 34 Or App 485, 579 P2d 269, *rev den* 284 Or 80a (1978), we rejected a similar argument and explained:

"Plaintiff concedes that in order for the contract to be valid, it had to be ratified by the Board of County Commissioners. Viewing the evidence most favorably to plaintiff what occurred was this: Following the negotiations between plaintiff and the Chairman, the Chairman informally contacted the other county commissioners and advised them that it was essential that there be an immediate appointment of a Director of Public Safety and the terms of his agreement with plaintiff. Each of the commissioners informally assented to the agreement. On the following day the Board approved the following order:

" 'It appearing to the Board that the Chairman desires to appoint JOHN BARDELL PURCELL as the Director of the Department of Public Safety for Multnomah County; and the Board *now being fully advised in the premises*, does hereby

" 'APPROVE the appointment of JOHN BARDELL PURCELL as Director of the Department of Public Safety effective upon the date to be determined by the Chairman.' (Emphasis supplied.)

"The only argument advanced by the county is that the order merely affirmed the appointment and not the contract. The ultimate question, however, is whether there was in fact a ratification of the contract. The evidence of the previous conversations between the Chairman and members of the Board, added to the fact that the order states that the Board was 'now being fully advised in the premises' and that the county began making pension deductions from plaintiff's paycheck and continued to do so until late 1972 was sufficient evidence to support the trial court's finding that the order approving the appointment was also a ratification of the contract. The county does not cite any authority that there is a requirement of any particular formality to effectuate a ratification."

*Id*. at 489. Similarly, plaintiff cites no convincing authority here, other than the inapposite ORS 192.650, for the proposition that there is any particular kind of formality by which its board must act to approve a contract.

Finally, plaintiff argues in a variety of ways that Osmin, a single board member, had no authority to bind the board through the comment repeated in Plaisance's affidavit. Plaintiff also cites a host of authority for that proposition,

*e.g., Holdner v. Columbia County,* 123 Or App 48, 858 P2d 901 (1993). As defendant points out, however, the proposition is off the mark and the authority is largely inapposite, because Osmin did not purport to be acting *for* plaintiff or *for* the board; rather, she was describing an action that *the board itself had taken* and that, as such, was sufficient to authorize the agreement. The distinction is aptly demonstrated in *Holdner* itself where, after holding that a single governing body member could not actually—or through apparent authority—bind the county, we noted that the plaintiff did not make the argument on appeal that the county had ratified the board member's promise. *Id.* at 53 n 3. Hence, we did not address that issue, which is the analogous one to the issue here. We hold that the trial court erred in holding that summary judgment was appropriate on the board approval question.

Given our disposition of the first two issues, the remaining issue—whether summary judgment was proper on the estoppel/apparent agency defense—is nondispositive. If Brock had actual authority, as a reasonable juror could find, it is inconsequential whether she also could bind the district on the basis of the apparent authority theory. However, because a reasonable juror could find that Brock lacked actual authority, we will briefly discuss the apparent authority issue as one that may arise on remand.

In *Wiggins v. Barrett & Associates,* 295 Or 679, 683, 669 P2d 1132 (1983), the Supreme Court held that a governmental body may "be bound by the promise of its agent acting beyond the scope of his actual authority" if

"(a) The municipality clothes the agent with apparent authority, (b) the promise is one which the municipality could lawfully make and perform, (c) there is no statute, charter, ordinance, administrative rule, or public record that puts the agent's act beyond his authority, (d) the person asserting the authority has no reason to know of the want of actual authority, and (e) the municipality has accepted and retained the benefit received by the municipality in return for the promise."

Plaintiff argues that Brock's promise here was one that plaintiff could not lawfully make or perform, because

competitive bidding requirements were not followed. However, we have held that summary judgment on the competitive bidding issue was erroneously allowed.

Plaintiff also argues that Brock's lack of actual authority was a matter of statute and that defendant was on notice of that lack of authority, because the board's minutes do not reflect that an affirmative vote was taken to approve the agreement. However, we have also held earlier that that argument is unavailing, at least as a basis for summary judgment, because it cannot be said as a matter of law that the absence of a minute entry means *ipso facto* that the agreement was not approved by the board.

Plaintiff does not and could not plausibly argue, in the words of *Wiggins*, that it has not "accepted and retained the benefit" it has received from the contract it seeks to abrogate. As with the other issues, the trial court erred in ruling that summary judgment was proper on the apparent authority and equitable estoppel issues.

Reversed and remanded.